Brassard, Raymond J., J.
The plaintiff Paul Adam-son (“Adamson”) brought this action against defendants (1) Mortgage Electronic Registration Systems, Inc. (“MERS”); (2) Deutsche Bank National Trust Company as trustee of Fremont Home Loan Trust Series 2006-3 (“Deutsche Bank”); (3) Wells Fargo Bank, N.A. d/b/a America’s Servicing Company (“America’s Servicing”); and (4) Signature Group Holdings, Inc. f/k/a Fremont Investment and Loan Company (“Fremont”) (collectively the “Defendants”). The matter is before the court on Adamson’s motion for a preliminary injunction to prevent the Defendants from transferring property at 35 Harold Street, Roxbury (the “Property”) pursuant to a foreclosure sale conducted by the Defendants.[2] For the reasons stated below, Adamson’s motion for a preliminary injunction is DENIED.
BACKGROUND
“By definition, a preliminary injunction must be granted or denied after an abbreviated presentation of the facts and the law.” Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 616 (1980). Consequently, the facts relevant to the instant motion are based on Adamson’s complaint, affidavits, attached exhibits, and motions furnished by the parties.
On August 9, 2006, Adamson obtained a mortgage loan from Fremont and executed a promissory Note (“Note”) in favor of Fremont. The mortgage loan was secured by a Mortgage (“Mortgage”) on the Property. The Mortgage lists the borrower/mortgagor as Paul Adamson and MERS as the mortgagee “acting solely as nominee for Lender and Lender’s successors and assigns.” Fremont is listed as the lender. The Mortgage was in the amount of $444,000.00 with a fixed rate loan at 8.5% interest and a balloon payment after thirty years. The payments of principal and interest were $3,191.21 for thirty years with a payment of $370,912.10 due on September 1,2036. The Mortgage was the result of a refinancing of the Property. The Property is currently occupied by Adamson and serves as Adamson’s family home.
Fremont sold its ownership interests in the Adam-son mortgage loan to Greenwich Capital Financial Products, Inc. (“Greenwich”) on October 27, 2006. The Mortgage was then pooled with other loans and placed into a mortgage securitized trust, Fremont Home and Loan Trust Series 2006-3, pursuant to a Pooling and Servicing Agreement (the “PSA”) dated September 1, 2006. Deutsche Bank is the trustee of Fremont Home and Loan Trust Series 2006-3 and America’s Servicing began servicing the Mortgage on behalf of Deutsche Bank on February 13, 2007, in accordance with the terms of the PSA.
Adamson was unable to maintain the payments scheduled on the Mortgage. Adamson attempted to work with America’s Servicing as the servicer of the Mortgage to modify the Mortgage.[3] The parties were still in the process of negotiating a modification when the foreclosure sale occurred.
On August 11, 2010, MERS held a foreclosure sale and a private buyer purchased the Property. MERS had allegedly scheduled a closing for February 25, 2011, at which time it intended to transfer the Properly to the buyer.
On February 23, 2011, Adamson filed a complaint in the Superior Court seeking injunctive relief to prevent the Defendants from transferring the Property and to challenge the validity of the foreclosure. In the complaint, Adamson named the following causes of action: (1) breach of the covenant of good faith and fair dealing; (2) unjust enrichment; (3) negligence; (4) the Defendants were not entitled to foreclose because MERS did not provide proof that it was the owner of the Note with the authority to enforce it; (5) predatory home loan practices in violation of G.L.c. 183C, § 15(b)(2); and (6) infliction of emotional distress.
Adamson moved for a preliminary injunction to prevent the Defendants from transferring the Property. On March 21, 2011, a hearing was held before this court. The court issued a temporary restraining order preventing the transfer of the Property until a decision on the merits of the preliminary injunction was reached.
DISCUSSION
I. Preliminary Injunction Standard
When evaluating a motion for a preliminary injunction, this court must perform a three-part balancing test. See Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 616-17 (1980). First, the court must evaluate the moving party’s claim of injury and its likelihood of success on the merits. See id. at 617. Second, the court must determine whether the failure to issue a preliminary injunction would subject the moving party to irreparable injury. See id. In the context of a *154 motion for a preliminary injunction, irreparable injuries are losses that cannot be repaired or adequately compensated by a final judgment. See id. at 617 n. 11. Third, “[i]f the judge is convinced that failure to issue the injunction would subject the moving party to a substantial risk of irreparable harm, the judge must balance this risk against any similar risk of irreparable harm which granting the injunction would create for the opposing party.” Id. at 617. In balancing these factors, “[w]hat matters as to each party is not the raw amount of irreparable harm the party might conceivably suffer, but rather the risk of such harm in light of the party’s chance of success on the merits.” Id. “Only where the balance between these risks cuts in favor of the moving party may a preliminary injunction properly issue.” Id.
II. Analysis
Adamson argues that MERS was not entitled to foreclose on the Property because it did not possess a valid assignment of the Mortgage at the time of the foreclosure sale. Adamson urges that because the Mortgage states that MERS is acting solely as nominee for the lender, MERS only holds bare legal title to the Mortgage, and therefore, holds no interest in the underlying foreclosure transaction. Adamson also argues that MERS was not entitled to foreclose because it did not hold the Note at the time of the foreclosure sale. The Defendants argue that as mortgagee of the Mortgage, MERS had the authority to foreclose and that Massachusetts law does not require the mortgagee to hold the note at the time of foreclosure.
A. MERS has authority as mortgagee under the Mortgage to foreclose on the Property and the Mortgage specifically grants MERS the power to foreclose.
It is undisputed that MERS is listed as the mortgagee on the Mortgage acting solely as nominee for the lender and the lender’s successors and assigns. The Mortgage expressly grants MERS specific rights and duties under the Mortgage. Under the section titled “Transfer of Rights in the Properly,” the Mortgage states: “Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender’s successors and assigns) and to the successors and assigns of MERS, with the power of sale, the following described property [description of the Property].” (Emphasis added.) The Mortgage goes on to further state:
Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender’s successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose, and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument. (Emphasis added.)
General Laws c. 244, §14 states that the “mortgagee" or “a person authorized by the power of sale” has the authority to foreclose under the power of sale in Massachusetts. MERS is the mortgagee of record.
Adamson is correct that as nominee, MERS’s rights and duties under the Mortgage are limited. A nominee is generally defined as “[a] person designated to act in place of another, usu[ally] in a veiy limited way," or a “party who holds bare legal title for the benefit of others . . .” Black’s Law Dictionary 1149 (9th ed. 2009).
The Mortgage, however, expressly grants MERS the authority to foreclose on the Property and to sell the Property. Adamson has cited to no authority that stands for the proposition that MERS as nominee does not have the legal authority to foreclose in Massachusetts. But see In re Huggins, 357 B.R. 180, 183-84 (Bankr.D.Mass. 2006) (finding that MERS as nominee was authorized to conduct a foreclosure by power of sale under G.L.c. 244, §14).
Further, a recent decision in the Massachusetts Land Court (Cutler, J.) confirmed MERS’s authority to foreclose as nominee where MERS was granted the power to foreclose in the mortgage. See Lyons v. Mortgage Elec. Registration Sys., Inc., No. 416377, slip op. at 3-4 (Mass. Land Ct. Jan. 4, 2011). The Land Court explicitly rejected the argument that MERS could not foreclose because the mortgage was never assigned to it. See id. The court found that as nominee for the lender and as the record mortgagee, MERS did not need an assignment to foreclose. See id. at 4-5.
General Laws c. 244, §14 authorizes the exercise of foreclosure through the power of sale by a mortgagee or person authorized to sell. MERS is listed as mortgagee and the Mortgage expressly grants MERS the authority to foreclose. In the absence of conflicting authority, Adamson cannot show that he will likely succeed on the claim that MERS lacked the authority to foreclose under Massachusetts law.[4]
B. As the mortgagee, MERS was not required to hold the Note at the time of the foreclosure sale.
Although the party seeking to foreclose in Massachusetts is often the holder of the note, Adamson fails to cite to any authority that stands for the proposition that the foreclosing party must hold both the mortgage and the note at the time of the foreclosure sale.
The “Massachusetts statute governing foreclosure sales is addressed to mortgagees, not note holders.” Valerio v. U.S. Bank, N.A., 716 F.Sup.2d 124, 128 (D.Mass. 2010) (denying the plaintiffs request for a preliminary injunction, in part, because it rejected the plaintiffs argument that because the defendant did not hold the note, it did not have the authority to foreclose). As discussed earlier, G.L.c. 244, §14 states *155 that mortgagees are able to exercise the power of sale in Massachusetts. Courts have long distinguished the holder of the mortgage from the holder of the note. See, e.g., Ibanez, 458 Mass. at 652. For example, the Supreme Judicial Court recognized that where the mortgage and the note are held by different parties “the holder of the mortgage holds the mortgage in trust for the purchaser of the note, who has an equitable right to obtain an assignment of the mortgage . . .” Id. (quoting Barnes v. Boardman, 149 Mass. 106, 114 (1889)) (internal citations omitted).
MERS as the record mortgagee has the authority to foreclose under the Massachusetts statutory scheme even if it did not hold the Note. See Boruchoff v. Ayvasian, 323 Mass. 1, 10 (1948) (“Ordinarily, where a mortgage and the obligation secured thereby are held by different persons, the mortgage is regarded as an incident to the obligation and, therefore, held in trust for the benefit of the owner of the obligation”).[5] In the absence of authority requiring the foreclosing party to hold the note at the time of foreclosure, Adamson cannot show a likelihood of success on the merits.
ORDER
For the foregoing reasons, Adamson’s motion for a preliminary injunction is DENIED and the temporary restraining order issued on March 21, 2011 is lifted.

In the complaint, Adamson alleged that the foreclosure sale was invalid because (1) the Defendants did not comply with the terms of the preliminary injunction issued by the Superior Court in Commonwealth v. Fremont Inv. & Loan, 23 Mass. L. Rptr. 567, 577-78 (Mass. Super. 2008), aff'd, 452 Mass. 733 (2008); and (2) the Defendants violated the Predatory Home Loan Practices Act (the “Act”) by collecting on a high cost home mortgage loan. At the preliminary injunction hearing, Adamson conceded that the preliminary injunction issued in Fremont did not cover his mortgage loan because Fremont transferred all of its interests in the mortgage loan before the preliminary injunction was issued. In addition, Adamson also conceded that his mortgage loan did meet the statutory definition of a “high cost home mortgage loan,” and therefore, the Act was not applicable. See G.L.c. 183C, §2.

As servicer of the Mortgage, America’s Servicing presumably had the authority to engage in modification negotiations with Adamson and there is no evidence in the record to suggest that it lacked such authority.

At the preliminary injunction hearing, Adamson further urged that under the Supreme Judicial Court decision in U.S. Bank Nat’l Ass'n v. Ibanez, 458 Mass. 637 (2011), the foreclosure was invalid because Deutsche Bank failed to show a complete chain of assignments linking it to the record holder of the Mortgage. The Defendants had alleged that Deutsche Bank was the holder of the Mortgage as trustee of Fremont Home Loan Trust 2006-3. This court agrees that the holding in Ibanez stands for the proposition that an entity seeking to foreclose “must hold the mortgage at the time of the notice and sale in order accurately to identify itself as the present holder in the notice and in order to have the authority to foreclose under the power of sale . . .” Ibanez, 458 Mass. at 651. This court further agrees that based on the preliminary injunction record, there is insufficient evidence to show a complete chain of assignments from Fremont, as record holder of the Mortgage, to Deutsche Bank. However, this court finds that the facts in the present case are distinguishable from the facts presented in Ibanez. In Ibanez, the foreclosing parties were the entities claiming to be the holders of the mortgages through a chain of assignments. See id. at 640-45. Here, MERS is the foreclosing party acting as the mortgagee and the nominee of the holder of the Mortgage. Therefore, any defect in Deutsche Bank’s chain of assignments does not affect MERS’s authority to foreclose as the mortgagee and as the nominee for the current holder of the Mortgage, whoever that party may be. The court also notes that Adamson did not question Deutsche Bank’s claim that it was the holder of the Mortgage in either his complaint or in his memorandum. Thus, the court does not find that Deutsche Bank does not hold the Mortgage through a valid chain of assignment, but rather, that the current evidence on the record does not establish a valid assignment.

Deutsche Bank is the holder of the Note indorsed in blank. See G.L.c. 106, §3-205 (“When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed”). If Deutsche Bank were also the holder of the Mortgage, there would be no disconnect between the Note and the Mortgage. See In re Huggins, 357 B.R. at 184 (“MERS is acting as nominee for Spectrum, which holds the Note, and therefore there is no disconnection between note and mortgage”).