SAMUEL GREENBERG *vs.* MAYER G. WEISMAN & another.

Suffolk.   February 5, 1963. — April 3, 1963.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, KIRK,
& REARDON, JJ.

*Contract,* What constitutes, Consideration, Novation, Building contract.
  *Frauds, Statute of.  Evidence,* Business record.  *Practice, Civil,* Ques-
  tion by judge, Comment by judge.   *Error,* Whether error harmful.

Evidence, that, after the painting subcontractor on a house under construc-
   tion had done part of the painting work but had not received any pay-
   ment from the general contractor notwithstanding several demands for
   payment, there was a conversation between the painter and the owner in
   which, in effect, the painter said he would not work for the general con-
   tractor any more but would resume work if the owner agreed to pay him
   a stated amount for the work he had already done and would do "to
   finish the house" and he could "look for money from" the owner, and
   the owner so agreed, and that the painter proceeded with his work ac-
   cordingly, warranted conclusions that the painter was justified in treat-
   ing his subcontract with the general contractor as terminated so that a
   new contract between the painter and the owner could be made without
   a novation respecting the subcontract, and that such a new contract was
   made supported by sufficient consideration; a conclusion was not re-
   quired that the owner had made a promise within the statute of frauds,
   G. L. c. 259, § 1, Second, to answer for the general contractor's debt to
   the painter.   [702–703]
At the trial of an action by a painter against the owner of a house, the
   judge could properly find to be admissible under G. L. c. 233, § 78, testi-
   mony by the plaintiff from his record book as to work done and mate-
   rials supplied at the house, and prices, notwithstanding further testi-
   mony by him that he had originally noted such data on scraps of paper
   and had transferred the data to the record book and thrown away the
   scraps of paper when asked by his attorney for his records shortly
   before the commencement of the action.   [703]
No reversible error appeared at the trial of an action in certain questions
   put to witnesses by the judge, or in his paraphrasing of some of their
   testimony, or in a comment made by him as to counsel's quotation of
   testimony.   [704–705]

CONTRACT.   Writ in the Superior Court dated November
25, 1959.

The action was tried before *Lurie, J.*

*Sheldon Newman* for the defendants.

*Louis Kobrin* (*Simon B. Stein* with him) for the plaintiff.

WHITTEMORE, J.    The plaintiff in this action of contract had a verdict on an account annexed for painting work and materials supplied to the defendants' house.    These are the defendants' exceptions to the refusal of the trial judge to direct verdicts for them, to rulings on the evidence, and to the conduct of the trial.

The jury could have found these facts: The plaintiff, a subcontractor, had an oral contract with Miller Construction Co. (Miller) to do the painting work called for by a contract between Miller and the defendants for the construction of the house.    The plaintiff, in the period from March to June 19, 1959, had done work to the value of $800 for which the defendants had paid Miller $800, but the plaintiff had been paid nothing, although he had demanded payment several times in the period from June 19, 1959, to August 31, 1959.    Shortly before August 31 Miller told the plaintiff to see the male defendant (Weisman).    The plaintiff thereupon saw Weisman, and, as he testified, told him that he had received no money from Miller but would "come to work in this house, providing if you agree to pay me for the work, the entire work that I did and what I am going to do to finish the house, which the amount is $3,000 . . . [I] don't want no Mr. Miller no more on this house because he didn't give me any money on this house . . . that is why I refuse to work for him and have nothing to do with him unless you take over and I shall look for money from you." Weisman replied that he was satisfied with the plaintiff's work and would "pay the plaintiff whatever is coming to him and that this payment to the plaintiff would be taken over by him."    The plaintiff replied, "all right, I'll come to work next Monday."    The plaintiff resumed work on August 31 and after one week asked the defendants for money but received none.    He continued to work and to ask for money but was not paid.    Miller was on the job from June to October 17, 1959.    On September 3, 1959, the defendants and Miller made a supplementary contract under which Miller had to finish the work by October 17, 1959, and the defendants could refuse to make further payments until the

house was completed and also had the right to see to it that sums then owing the contractor "under the original written agreement, if it was complied with, were distributed by the contractor to the subcontractors." On September 29, 1959, Mrs. Weisman gave Miller a check for $1,000. Thereafter Miller's president in the presence of the plaintiff and the architect indorsed the check to the plaintiff. The plaintiff put it in his pocket. On that day or the next, before depositing it, he "for the first time, noticed it was payable to Miller and endorsed over to him." The plaintiff was concerned with being paid.[1] After October 17, 1959, the defendants engaged a new general contractor. October 16, 1959, was the last day on which the plaintiff worked; he had then completed all the painting that could be done. After October 16, the plaintiff "called the defendants a few times for money . . . but received none." In November, when Weisman told him of the new contract, the plaintiff asked, "What about . . . [me]," and Weisman told him "that's the end."

1.   The conclusion was not required that Weisman had undertaken to answer for the debt of Miller so that, the statute of frauds having been pleaded (G. L. c. 259, § 1, Second), the plaintiff could not recover. The jury could have found that the plaintiff was warranted in acting on the premise that his oral contract with Miller was at an end, Miller having in effect repudiated it. *Hughes* v. *Rendle Corp.* 271 Mass. 208, 212, and cases cited. *Bucholz* v. *Green Bros. Co.* 272 Mass. 49, 52–53. *Quintin Vespa Co. Inc.* v. *Construction Serv. Co.* 343 Mass. 547, 554, and cases cited. See *Nevins* v. *Ward,* 320 Mass. 70, 73, and cases cited. It was not necessary, therefore, in order to have a new contract with Weisman, that there be a novation in respect of Miller's contract with the plaintiff. Compare *Doodlesack* v. *Superfine Coal & Ice Corp.* 292 Mass. 424, 426–427. The jury, believing the plaintiff, could have found that Weisman and the plaintiff made such a new contract. The considera-

---

[1] Asked on cross-examination, "[Y]ou didn't care where the money came from so long as you got paid," the plaintiff replied, "Well, I got the check."

tion is plain: for the remaining work done by the plaintiff, Weisman would pay the stated price for the work done and to be done.

There was no basis for finding a contract with Mrs. Weisman however, and a verdict should have been directed for her.

2. The plaintiff testified from a record book as to work done, materials supplied, and prices; ''those records reflect[ed] his gross income and expenses during the year so that he could file his income tax return.'' On cross-examination he testified that he had originally noted the data on scraps of paper but when ''his attorney told him to bring in his records of hours' [of] work and stock used he had written over the summary which he had in court . . . and had thrown away the original notes, records or papers which had been on scrap paper; . . . he made his summary in November of 1959 for the purpose of this case at the time he consulted his lawyer . . . [; this was the] summary from which he had read when asked . . . on direct examination about the work he had done.'' The writ is dated November 25, 1959.

The defendants, following this testimony, seasonably presented, and excepted to the denial of, a motion that the testimony of the plaintiff as to the work he did on the house be struck. It was not error to deny the motion.

It was open to the judge to find that although the plaintiff transferred the data after he was asked by his attorney for the records, he was then making entries in a book which he kept for business purposes, and that the entries were ''made in good faith in the regular course of business and before the beginning of the civil . . . proceeding'' as required by G. L. c. 233, § 78. The judge could conclude from the plaintiff's halting use of English and other indices that he was not educated or experienced in good business practice, and in the circumstances he could conclude that the plaintiff was posting his books and not making evidence. The admission of the records imports the necessary findings. *Saba* v. *Cohen,* 333 Mass. 557, 558.

3. The trial judge's participation in the examination of witnesses did not result in prejudicial error requiring reversal.

(a) The plaintiff testified that he received bills for materials some of which were bought for the defendants' house and some for other houses. The plaintiff's further answers not appearing responsive to counsel, the judge said: "As I understand it . . . you are seeking to say, that you would order whatever material you needed and you would charge it to a given job, only the material . . . you used on that job?" The plaintiff answered, "That is correct." This was not objectionable. We construe the testimony as did the trial judge. Further cross-examination was not curtailed.

(b) The defendants' attorney asked the plaintiff, "[D]idn't you tell us . . . that Mr. Weisman was going to have to talk with his architect and his lawyer?" The judge pointed out that the plaintiff "didn't say Mr. Weisman— he said Mrs. Weisman told him that," and then asked the witness if that was not his testimony. When the defendants' attorney asked to note an objection to the judge's comment, the judge said: "Of course, you may, but I suggest to you my young friend, that you be careful when you undertake to quote testimony. You may take an exception to that too, if you care to." The objection was ill founded as the question was at least ambiguous. The ensuing remark by the judge should not have been made but it is not ground for reversal.

(c) There was an exception to the following: "The judge: As I understand it, Mr. Miller, you stated that you told Mr. Greenberg that the architect had said that Mr. Weisman would guarantee the subcontractors the amount that was due on the contract, is that right? The witness: Yes, sir, the balance of the money that was due on the total contract. . . . The judge: So that you, in effect, said whatever is owed to you, the architect says Mr. Weisman will pay you. The witness: That is right, sir. The judge: All right."

As stated by the judge in his paraphrasing of the testimony, the witness was saying that, according to the archi-

tect, Weisman would pay what was owed by Miller. There was no prejudice. This testimony did not support a novation. The words, of course, imposed no obligation on Weisman. They did not indicate that Miller was recognizing a repudiation by the plaintiff of the contract between them.

(d) The president of Miller on cross-examination by the plaintiff's attorney testified that he did not remember that the plaintiff, after he returned to work, said he was through with Miller, but that the plaintiff did say he would continue on the job as long as "we get him the money." "[Q.] Didn't he, . . . convey to you the idea that he did not want to do any more work . . . unless you paid him? . . . [Objection.] THE JUDGE: Did he convey such an idea to you? THE WITNESS: Yes, he did. . . . THE JUDGE: . . . Mr. Miller says that Mr. Greenberg conveyed the idea to him, that he didn't have to work for Mr. Miller, unless he got paid. That is what you are saying? THE WITNESS: Yes, sir. THE JUDGE: Thank you." The defendants seasonably objected and excepted. The questions were objectionable and the paraphrasing was erroneous. No basis is shown for cross-examination as to what idea the plaintiff had "conveyed." The objectionable questions were, however, harmless as the implication was plain from the witness's unprompted testimony that the plaintiff did not want to continue in the job unless Miller was to "get him the money." The ensuing paraphrasing was not in accord with the testimony. The witness had not implied that the plaintiff had said that "he didn't *have* to work for Mr. Miller unless he got paid" (emphasis supplied). The error, however, was not of consequence. The effect of the judge's words was to import a suggestion that the plaintiff recognized at the time of the conversation with Miller that he was still in a contractual relationship with Miller, that is, he *did* have to work for Miller *if* he was paid. This supported the defendants' main contention and they may not complain.

> *Exceptions of Mayer G. Weisman overruled.*
> *Exceptions of Elaine B. Weisman sustained;*
> *judgment for that defendant.*