First National Bank of Cape Cod *v.* North Adams Hoosac Savings Bank.

FIRST NATIONAL BANK OF CAPE COD *vs.* NORTH ADAMS
HOOSAC SAVINGS BANK.

Barnstable.    March 13, 1979. — June 22, 1979.

Present: HALE, C.J., ROSE, & PERRETTA, JJ.

*Practice, Civil*, Summary judgment, Declaratory relief. *Notice. Mortgage*, Assignment. *Negotiable Instruments*, Assignment, Holder in due course.

In an action by the holder of an assignment of a mortgage agreement and note against a bank having possession of the note secured by the mortgage agreement, the plaintiff's affidavit which was made on the basis of personal knowledge of the past practices of the parties as well as a review of business records was sufficient under Mass.R.Civ.P. 56(e) to shift to the defendant the burden of making a response setting forth specific facts showing that there was a genuine issue for trial, and an alleged inconsistency between the plaintiff's affidavit and its answers to interrogatories was not a basis for striking the affidavit where the inconsistency was immaterial to the issues raised. [793-795]

In a declaratory judgment action by the holder of an assignment of a mortgage agreement and note against a bank having possession of the note secured by the mortgage agreement, the defendant's affidavit was not sufficient under Mass.R.Civ.P. 56(e) to show the existence of a genuine issue of material fact with respect to whether it had accepted the note without notice of the plaintiff's claim to it where the defendant had actual knowledge of the plaintiff's claim. [795-798]

CIVIL ACTION commenced in the Superior Court on April 28, 1975.

The case was heard by *Hallisey*, J., on a motion for summary judgment.

*Robert I. Manuel* for the defendant.
*M. Robert Dushman* for the plaintiff.

7 Mass. App. Ct. 790             791

First National Bank of Cape Cod v. North Adams Hoosac Savings Bank.

PERRETTA, J. The defendant, North Adams Hoosac Savings Bank (North Adams), has possession of a note which is secured by a mortgage agreement on a family house. The plaintiff, First National Bank of Cape Cod (Cape Cod), is the holder of an assignment of that mortgage agreement and note. Cape Cod commenced this action in the Superior Court pursuant to G. L. c. 231A, seeking a determination that North Adams is not a holder in due course of the note, and that Cape Cod is entitled to the monthly mortgage payments being made by the mortgagors.[1] After consideration of the pleadings, answers to interrogatories, requests for admissions, and affidavits,[2] the judge allowed Cape Cod's motion for summary judgment. The judgment, as modified hereinafter, is affirmed.

The controversy arises out of an interim financing practice engaged in by Cape Cod and the Puritan Mortgage Company, Inc. (Puritan), and frequently, as here, involving North Adams. In all, these three parties had engaged in approximately fifty-one such transactions without incident until Puritan discontinued its business at a critical step in the process of this, the fifty-second, transaction and left the banks to their own devices.

The final transaction began as a typical one with Puritan providing financing to the mortgagors, who executed a note for the amount of Puritan's loan and then secured it by a mortgage of their interest in the property. Puritan was named as payee of the note and mortgage. The note

---

[1] The mortgagors were necessary parties under G. L. c. 231A, § 8, and were named as defendants in the complaint. They have paid the monthly mortgage payments into an escrow account, and they are only stakeholders in this action between the banks. They are not parties to this appeal.

[2] The banks each filed answers to interrogatories and requests for admissions which were not denied by the other within 30 days and, therefore, were deemed admitted and conclusive as to this action. Mass.R.Civ.P. 36, 365 Mass. 795-797 (1974). Both the answers to their interrogatories and requests for admissions could be considered on the motions for summary judgment. MassR.Civ.P. 56(c), 365 Mass. 824 (1974).

clearly recited its connection to the mortgage. This transaction was executed on December 6, 1974, the closing date of the sale of the house, and took place at the registry of deeds for the county of Barnstable. On that same day Puritan recorded the mortgage and then it executed an assignment[3] of it and the mortgagors' note to Cape Cod which Puritan immediately recorded. Puritan completed the events of that day by indorsing the note over to North Adams, but it did not then deliver it to that bank. So far, the process was being conducted in the usual way. Thereafter, Puritan executed its own note payable to Cape Cod and sent this note with the recorded assignment to Cape Cod. These papers were received by Cape Cod on December 19, and, as was customary, Cape Cod then transferred to Puritan's account ninety percent of the face amount of the note secured by the mortgage. Puritan withdrew these funds from its account on that day or soon thereafter. Next, Puritan sent the mortgagors' note and an unexecuted and incomplete assignment of the mortgage agreement to North Adams. These papers were received by North Adams on December 31. This unexecuted and incomplete assignment form[4] specified that Cape Cod had

---

[3] This assignment, under seal, stated in relevant part: "Puritan Mortgage Company, Inc. holder of a real estate mortgage ... assigns without recourse in any event said mortgage and the note and claim secured thereby to the First National Bank of Cape Cod."

[4] The assignment form in relevant part is set forth here: "ASSIGN-MENT OF MORTGAGE: PURITAN MORTGAGE COMPANY, INC., a Massachusetts Corporation duly organized by law and having a usual place of business in Yarmouth (South), Barnstable County, Massachusetts, being the holder of a mortgage from [the mortgagors] to PURITAN MORTGAGE COMPANY, INC., dated December 6, 1974, recorded with the Barnstable County Registry of Deeds in Book　　　Page　　　, which said mortgage had been assigned to the FIRST NATIONAL BANK OF CAPE COD by assignment dated December 6, 1974, recorded at the Barnstable County Registry of Deeds in Book　　　Page　　　, and reassigned by the FIRST NATIONAL BANK OF CAPE COD to PURITAN MORTGAGE COMPANY, INC. by assignment dated　　　197　　　and recorded at the Barnstable County Registry of Deeds as Document #　　　herewith assigns said mortgage and the note and claim secured thereby to NORTH ADAMS HOOSAC

received a prior recorded assignment of the mortgagors' note and the mortgage. On the day of receipt, December 31, North Adams sent its check to Puritan in the amount of the face value of the mortgagors' note plus a fee. In the past transactions, Puritan would take the money it had received from North Adams and use it to purchase the assignment of the mortgage agreement and mortgagors' note from Cape Cod, thereby also discharging its note to Cape Cod. Puritan would then transfer the mortgage agreement to North Adams by executing the assignment form (see note 4, *supra*) previously sent to North Adams. However, in the present instance, Puritan abruptly discontinued doing business after it received the funds from North Adams. Puritan never completed this transaction by repurchasing the assignment from Cape Cod or discharging its note to that bank. Thus, Cape Cod holds its recorded assignment of the mortgagors' note, but North Adams holds that note, and the issue is whether North Adams is a holder in due course or merely a holder.

Cape Cod's motion for summary judgment was accompanied by an affidavit from its vice president; he had also answered North Adams' interrogatories. In the affidavit he stated that he had personal knowledge of the practice between Cape Cod and Puritan, which he described, and that on information and belief once Puritan purchased the assignment from Cape Cod, Puritan would reassign the mortgage and the mortgage note "to the permanent lending institution." He then stated that he had reviewed Cape Cod's business records of this transaction, and those records indicated that Cape Cod paid Puritan on December 20.

North Adams moved to strike this affidavit, in whole or in part, on the basis that it was not made on personal knowledge, and that it contained statements inconsistent

SAVINGS BANK, a banking corporation duly organized by law with a usual place of business in North Adams, Massachusetts" (emphasis and blanks original).

794 7 Mass. App. Ct. 790

First National Bank of Cape Cod v. North Adams Hoosac Savings Bank.

with Cape Cod's answers to interrogatories. The affidavit was made on the basis of personal knowledge of the past practices of the parties[5] as well as a review of business records and it was sufficient. Mass.R.Civ.P. 56(e), 365 Mass. 825 (1974). The affiant would have been competent to testify to these matters at trial. See *United States* v. *Johns-Manville Corp.*, 259 F. Supp. 440, 456, 458 (E.D.Pa. 1966); *Household Fuel Corp.* v. *Hamacher*, 331 Mass. 653, 655 (1954); *Greenberg* v. *Weisman*, 345 Mass. 700, 703 (1963); G. L. c. 233, § 78. Cf. *Stanton Indus. Inc.* v. *Columbus Mills, Inc.*, 4 Mass. App. Ct. 793 (1976). That portion of the affidavit which was based on information and belief would not have been admissible at trial, but it was immaterial. Even if this portion had been struck the remainder of the affidavit was more than adequate.

North Adams also points to an inconsistency[6] between Cape Cod's answers to interrogatories, wherein it is stated that Cape Cod transferred funds to Puritan's account on December 20, and its affidavit, wherein it is stated that Cape Cod paid Puritan on December 20. This alleged inconsistency is not a basis for striking the affidavit. *Johns-Manville Corp., supra* at 456. It is North Adams' position that the date of payment by Cape Cod to Puritan is critical for two reasons. First, that it established when Cape Cod had a security interest under G. L. c. 106, § 4-208(1) (*a*), in the funds it transferred to Puritan's account. Secondly, that Cape Cod did not act reason-

[5] It was also apparent from Cape Cod's answers to interrogatories that the affiant had dealt with Puritan in his capacity as an officer of the bank. As earlier noted, interrogatories may be considered on a motion for summary judgment. Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974). *Community Natl. Bank* v. *Dawes*, 369 Mass. 550, 553-554 (1976).

[6] North Adams alleges on appeal additional inconsistencies between the answers and the affidavit. Our review of the record indicates that Cape Cod's reference in their answers to a note was misunderstood by North Adams. Cape Cod had referred to Puritan's corporate note that it transferred to Cape Cod along with the mortgage assignment. North Adams thought the answer referred to the mortgagors' note. This misunderstanding created the "inconsistency."

ably in allowing the mortgagors' note to remain with Puritan after the funds were transferred to Puritan's account with knowledge that the note would be negotiated later to North Adams or another lending institution. In regard to the first contention, G. L. c. 106, § 4-208(1)(a), gives a bank a security interest in an item deposited in an account with it to the extent that the credit given for the item has been withdrawn. This provision is totally inapplicable to the present situation. Finally, whether Puritan received Cape Cod's money on December 20 or shortly thereafter is immaterial to whether North Adams is a holder in due course of the mortgagors' note, as is North Adams' second contention that Cape Cod did not act reasonably. It is North Adams' knowledge of the prior valid security interest at the time it received the mortgagors' note that determines the priorities between these two banks. See *Industrial Natl. Bank* v. *Leo's Used Car Exchange, Inc.*, 362 Mass. 797, 802-803 (1973); G. L. c. 106, § 3-306. Cape Cod's affidavit "was sufficient to shift to the defendant the burden of making a response setting forth specific facts showing that there was a genuine issue for trial. See 10 C.A. Wright & A.R. Miller, Federal Practice and Procedure §§ 2727, 2739 (1973)." *O'Brion, Russell & Co.* v. *LeMay*, 370 Mass. 243, 245 (1976).

The affidavit filed by North Adams in support of its motion for summary judgment did not establish that there was a genuine issue as to any material fact. Mass. R.Civ.P. 56(e). *Community Natl. Bank* v. *Dawes*, 369 Mass. 550, 556-557 (1976). North Adams does not deny or challenge that Cape Cod paid Puritan, or that North Adams received the unexecuted and incomplete assignment of the mortgage and mortgage note. The affidavit, signed by North Adams' vice president, states that it accepted the mortgagors' note without notice of Cape Cod's claim to it. The flaw in North Adams' argument is its position that notice of Cape Cod's claim to the mortgagors' note must be derived from the note itself. The mortgagors' note, when received by North Adams, did not

convey notice of Cape Cod's claim to it (see G. L. c. 106, § 3-304), but the unexecuted and incomplete assignment form (see note 4, *supra*) did. North Adams disputes this, asserting that it was described therein as the assignee of the mortgagors' note. However, the form clearly indicates Cape Cod acquired an interest in the note on December 6, and there is nothing to show that that interest was thereafter discharged. When the unexecuted and incomplete assignment form is reviewed in conjunction with North Adams' many prior identical dealings with Puritan,[7] it is evident that North Adams had notice that Cape Cod had an interest in the note until the completed assignment form was in hand. "A person has 'notice' of a fact when (a) he has actual knowledge of it; or (b) he has received a notice or notification of it; or (c) from all the facts and circumstances known to him at the time in question he has reason to know that it exists." G. L. c. 106 § 1-201(25), as amended through St. 1963, c. 188 §§ 1 and 24.

Although risky, there was nothing inherently wrong in the procedure employed by the parties. It has long been held in this Commonwealth that the transfer of a note which is secured by a mortgage is a valid transaction with legal title to the mortgage document remaining with the mortgagee in trust for the purchaser of the note who can thereafter enforce in equity an assignment of the mortgage. See e.g., *Barnes* v. *Boardman*, 149 Mass. 106, 114 (1889); *Commonwealth* v. *Globe Inv. Co.*, 168 Mass. 80, 81 (1897). The Uniform Commercial Code continues to recognize the negotiability of a note which is secured by a real estate mortgage. See G. L. c. 106, §§ 3-104(1), (2)(*d*), and 3-105(1)(*e*). North Adams' answers to interrogatories established that it had acquired from Puritan seventy-nine

---

[7] In its answers to interrogatories North Adams stated that in the normal course of events it "received the note first and then would receive notification that the mortgage and assignment was recorded at the ... Registry of Deeds and generally it received the assignment and mortgage at some time after it was returned to Puritan ...."

7 Mass. App. Ct. 790                                         797

First National Bank of Cape Cod v. North Adams Hoosac Savings Bank.

notes secured by real estate mortgages, within a twenty-eight month period, and of those seventy-nine transactions, fifty-two had been assigned originally to Cape Cod before being reassigned to North Adams. North Adams knew of Cape Cod's claim, G. L. c. 106, § 1-201(25), and it chose to accept the unexecuted and incomplete assignment form and pay Puritan. Its affidavit nowhere recites any facts to dispute that this form conveyed notice to it; it merely states it accepted the note in good faith and without notice. This was not sufficient to show the existence of a genuine issue of material fact, *Dawes, supra; O'Brion, supra,* and the undisputed facts, as disclosed in the pleadings, answers to interrogatories, requests for admissions, and affidavits establish that North Adams was precluded from being a holder in due course and that it took subject to Cape Cod's claim. There was no error in denying North Adams' motion for summary judgment and allowing that of Cape Cod.[8]

The trial judge declared that Cape Cod was the holder of the mortgagors' note and mortgage assigned to it on December 6. As the holder of the note,[9] Cape Cod also would be entitled to all payments to be made by the mortgagors on the note. G. L. c. 106, § 3-301. However, Cape Cod cannot be a holder of the note until it has possession of it, G. L. c. 106, § 1-201(20), and there is nothing in this record to indicate it does. "In proceedings under the declaratory judgment act, it is the duty of the judge to adjudicate the decisive issues involved in the controversy between the parties and to make declarations concerning such issues, thus putting the controversy to rest." *Zalt-*

[8] As a final argument, North Adams questions the "equities" of the judgment where Cape Cod did not show an actual loss of funds to Puritan and North Adams did. While equitable principles are certainly applicable to commercial transactions, G. L. c. 106, § 1-103, North Adams' contention is without basis in fact. Cape Cod credited Puritan's account and Puritan withdrew those funds.

[9] Cape Cod is not entitled to payments on the note as a mere assignee of the note. *O'Gasapian* v. *Danielson,* 284 Mass. 27, 30-33 (1933).

man v. *Daris*, 331 Mass. 458, 462 (1954). In addition to finding that a party is entitled to relief, the judge should grant such relief so that nothing is left for future determination. *Trustees of Dartmouth College* v. *Quincy*, 331 Mass. 219, 228 (1954). *Murley* v. *Murley*, 334 Mass. 627 (1956). Accordingly, the judgment is to be modified so as to order North Adams to transfer the mortgagors' note to Cape Cod, and as so modified, the judgment is affirmed.

*So ordered.*