Moriarty, Cornelius J., J.
This action involves the Home Affordable Modification Program (“HAMP”), a government program that promotes modification of residential mortgage loans to avoid foreclosure. The plaintiff, Devenia Mack (“Mack”), brings a putative class action on behalf of herself and other similarly situated residential mortgagors of Wells Fargo in Massachusetts for damages, declaratory judgment, and injunctive relief against Wells Fargo Bank, N.A. (“Wells Fargo”), Mortgage Electronic Registrations Systems, Inc. (“MERS”), MERSCORP, Harmon Law Offices, P.C. (“Harmon Law”), and Commonwealth Auction Associates, Inc.[2] Mack’s first amended complaint alleges the following counts; declaratory judgment (Count I); breach of contract (Count II); breach of the implied covenant of good faith and fair dealing (Count III); promissory estoppel (CountIV); violation of G.L.c. 93A, §§2 and 9 (Count V); violation of the Massachusetts Civil Rights Act (Count VI); and unjust enrichment (Count VII). This matter is now before the court on defendants Wells Fargo, MERS, and MERSCORP’s (collectively, “motion defendants”) motion to dismiss the complaint pursuant to Mass.R.Civ.P. 12(b)(6). Alternatively, motion defendants request that Mack make a more definite statement of the class allegations under Mass.R.Civ.P. 12(e). For the following reasons, the motion to dismiss is ALLOWED as to Count I of the complaint and DENIED as to all other counts. The motion for a more definite statement is ALLOWED.
FACTUAL BACKGROUND
For the purposes of deciding the motion, the court accepts as true all well-pleaded facts in Mack’s complaint.
On April 21, 2008, Mack executed a home mortgage loan in the amount of $166,380. The lender was New England Mortgage Corporation (“NEMC”), and the mortgagee was MERS, “solely as nominee for Lender . . . and Lender’s successors and assigns.” The mortgage contained the following language: “Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with the law or custom, MERS (as nominee for Lender and Lender’s successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or cancelling this Security Instrument.” Through the mortgage, Mack also granted NEMC the “power of sale.” The promissory note securing the mortgage contains endorsements by NEMC to Franklin American Mortgage Company (“Franklin"), and by Franklin to Wells Fargo.
In 2009, Mack experienced financial difficulty, and sought a modification of her mortgage from Wells Fargo. In September 2009, she was two mortgage payments behind. She contends that when she contacted Wells Fargo, its representative advised her that she was eligible for a permanent loan modification under HAMP if she made three reduced amount payments in October, November, and December of 2009.
On September 9, 2009, Wells Fargo sent Mack a confirmatory letter, with a Special Forbearance Agreement (“Forbearance Agreement”) enclosed. Mack signed the Forbearance Agreement on September 13, 2009, and returned it to Wells Fargo. She also completed paperwork about her then-current financial condition and other information about her personal circumstances, and properly submitted it to Wells Fargo. Thereafter, Mack made the agreed-upon reduced payments for October, November, and December 2009 in a timely manner.
On October 5, 2009, Mack spoke to another Wells Fargo representative who informed Mack that she was not enrolled in HAMP, but instead was enrolled in Special Forbearance. The representative also informed *16 Mack that Wells Fargo had not received the HAMP paperwork and requested that Mack fax such paperwork to Wells Fargo. Mack again completed and faxed the HAMP paperwork to Wells Fargo.
Also in October 2009, Mack received correspondence from Wells Fargo instructing her not to pay any amount to Wells Fargo until February 2010, at which time $12,521.65 would be due and owing. Mack did, however, make payments in the reduced amount for January, February, and March of 2010. Wells Fargo accepted each payment. Mack contends that, notwithstanding the representative’s advice that she should make reduced payments, she continued to receive phone calls from Wells Fargo looking for the regular mortgage payments.
On February 24, 2010, Mack received a letter from Wells Fargo, requesting financial documentation in support of her request for payment assistance. Mack contends that she, in reliance upon Wells Fargo’s representations that she was eligible for a loan modification under HAMP, paid $1,000 to American Guardian Loan Modification, LLC to assist her in obtaining a HAMP modification of her mortgage.
On April 22,2010, Mack received a letter from Wells Fargo informing her that her request for a mortgage modification had been denied. On May 20,2010, Mack received another letter from Wells Fargo requesting financial documentation in support of her request for payment assistance. On May 26, 2010, Mack received a letter that her loan had been referred to Wells Fargo’s representative, Harmon Law, for purposes of instituting foreclosure.
On September 16, 2010, Mack received a Notice of Mortgage Foreclosure Sale. According to this notice, foreclosure of her home was scheduled for October 18, 2010 by Wells Fargo. On October 13, 2010, Mack’s counsel sent to Harmon Law a written request for a postponement of the foreclosure sale as well as “satisfactory evidence that Wells Fargo has a legal right to foreclose” Mack’s property. The letter specifically stated that “nowhere is there any evidence that Wells Fargo is the holder of the promissory note from my ■ client or otherwise has standing to foreclose this mortgage.” In response, Harmon Law provided a copy of an assignment to Wells Fargo from MERS, executed by a Harmon Law attorney, Andrew S. Harmon (“Attorney Harmon”), in his capacity as Assistant Secretary and Vice President of MERS.
On October 15, 2010, Mack filed an action against Wells Fargo in Worcester Superior Court. Her original complaint named Wells Fargo as the single defendant and sought a declaration that it lacked standing to foreclose on Mack’s home. She also sought a temporary restraining order (“TRO”) prohibiting Wells Fargo from foreclosing.
On October 15, 2010, this court (Tucker, J.) granted an ex parte TRO. Mack contends that, notwithstanding the TRO, Wells Fargo, through Harmon Law, continued to advertise the sale of Mack’s home on the Commonwealth Auction Associates’ website. She further states that Wells Fargo continued to communicate with Mack directly, even though she was represented by counsel.
On October 28, 2010, this court (McCann, J.) granted Mack’s motion for a preliminary injunction enjoining Wells Fargo from foreclosing on her home. Mack contends that, notwithstanding the preliminary injunction, Wells Fargo scheduled the foreclosure for January 26, 2011.[3]
On December 23, 2010, Mack filed an amended complaint. The amended complaint added Harmon Law, Commonwealth Action, MERS, and MERSCORP as defendants, added additional claims, and sought to certify a class of similarly situated persons. Mack’s claims are based on two factual allegations. First, she contends that Wells Fargo offered her a loan modification under HAMP, that she fulfilled her obligations for such qualifications, and that Wells Fargo subsequently refused to modify her loan. These allegations give rise to Mack’s breach of contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, and violation of c. 93A claims.
Second, Mack alleges that Wells Fargo never legally held either the promissoiy note securing the mortgage nor the mortgage itself, but nevertheless accepted Mack’s monthly loan payments and sought to foreclose on her home, despite the issuance of the preliminary injunction. She seeks a declaratory judgment that MERS did not have the authority to assign the mortgage to Wells Fargo and asserts claims for unjust enrichment and violations of c. 93A and Massachusetts Civil Rights Act. She also seeks to certify a class of similarly situated residential mortgagors of Wells Fargo in Massachusetts.
On January 24, 2011, motion defendants removed this action to the United States District Court for the District of Massachusetts, alleging fed eral jurisdiction on the basis of the Class Action Fairness Act (“CAFA”), 28 U.S.C. § 1332(d). On February 11, 2011, they filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). On February 23, 2011, Mack filed a motion to remand the case to the Superior Court. On April 8, 2011, the District Court (F. Dennis Saylor, J.) granted Mack’s motion, remanded the case to this court, and denied motion defendants’ motion to dismiss as moot. Motion defendants then filed a petition to appeal the order remanding the case with the United States Court of Appeals for the First Circuit, which was denied.
DISCUSSION
1. Motion to Dismiss
I. Legal Standard
To survive a motion to dismiss, a complaint must set forth the basis of the plaintiffs entitlement to relief with “more than labels and conclusions.” Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). *17 While factual allegations need not be detailed, they “must be enough to raise a right to relief above the speculative level . . . [based] on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . .” Id., quoting Bell Atl. Corp., 550 U.S. at 555. At the pleading stage, Mass.R.Civ.P. 12(b)(6) requires that the complaint set forth “factual ‘allegations plausibly suggesting (not merely consistent with)’ an entitlement to relief...” Id., quoting Bell Atl. Corp., 550 U.S. at 557.
II. Analysis
A. Declaratory Judgment (Count I)
In Count I of her complaint, Mack seeks a declaration that 1) MERS, as a nominee and holder of bare legal title, has no power to assign or foreclose the lender’s equitable interest in the mortgage; and 2) that the assignment from MERS to Wells Fargo was invalid because the assignment was executed by an attorney from the foreclosing law firm. Motion defendants allege that Mack’s MERS-based claims must fail because MERS has standing to assign the mortgage. They further assert that Attorney Harmon was expressly authorized by valid corporate resolution to assign the mortgage on MERS’s behalf.
In support of her position that MERS lacks authority to assign mortgages where it is named “solely as nominee for Lender” and “holds only legal title to the interests granted by Borrower,” Mack relies on In re Agard, 444 B.R. 231, 250 (Bankr.E.D.N.Y. 2011). The Agard court found, in dicta, that MERS had no authority to assign a mortgage based on its nominee status in the absence of express authority from the loan’s servicer or owner. Id. at 250. Mack argues that in this case, just like in Agard, NEMC never gave MERS the authority to execute the assignment to Wells Fargo, and that the language of the mortgage, standing alone, does not confer that authority. See Agard, 444 B.R. at 253 (“[T]he fact that MERS is named ‘nominee in the Mortgage is not dispositive of the existence of an agency relationship and does not, in and of itself, give MERS any ‘authority to act’ ”).
Mack’s argument lacks merit. Although “no clear pattern of judicial guidance has emerged” concerning MERS’s power to foreclose or assign mortgages, Massachusetts courts adhere to the principle that MERS may both foreclose and assign mortgages held in its name. Re Marron, No. 10-45395, slip op. at 7 (Bankr.D.Mass. July 21, 2011), and cases cited. The Marrón court stated:
In Massachusetts, when a mortgage and applicable note are owned by different entities, the mortgagee is deemed to hold the mortgage in trust for the owner of the note, and the note owner has the right to seek a judicial order requiring the mortgagee to assign the mortgage to it. Unless and until the mortgage is thus assigned, however, the mortgagee retains legal title to the mortgage, albeit with a fiduciary duty to act on behalf of the owner of the note which holds a beneficial interest in the mortgage. The mortgagee has a fiduciary duty as trustee to act on behalf of the note owner, but retains title to the mortgage and the right to assign the mortgage consistent with that duly. This analysis does not change just because MERS, as nominee, is the mortgagee.
Id. slip op. at 8-9. The court found further support for the proposition that MERS has a sufficient interest in the debtor’s property to foreclose in the language of the mortgage, which stated that MERS, as nominee for lender and its successors and assigns, has the right to foreclose. Id. slip op. at 9. The court concluded that “[t]o the extent MERS held only bare legal title to the mortgage on the debtors’ residence in its capacity as trustee for the note owner, MERS was able to assign its interest” in the mortgage. Id. See also Kiah v. Aurora Loan Servs., LLC, 2011 WL 841282, at *4 (D.Mass. 2011) (“MERS had the power to act as the agent of any valid note holder under the terms of the mortgage documents. The plain language of the mortgage states that MERS was acting as nominee for [the originator] and its successors and assigns”); Adamson v. MERS, 2011 WL 1136462, at *3 [28 Mass. L. Rptr. 153] (Mass.Super. 2011) (mortgage’s language expressly granted MERS specific rights and duties under the mortgage).[4]
Mack’s argument that the assignment was invalid because it was executed by an attorney from foreclosing counsel’s law office also fails. Attorney Hannon was expressly authorized by valid corporate resolution to assign the mortgage on MERS’s behalf.[5] “Under Massachusetts law, an assignment of a mortgage is effective without the need to independently establish the authority of the assignor to make the assignment.” In re Marron, slip op. at 11, citing Aliberti v. GMAC Mortg., LLC, 2011 WL 1595442 (D.Mass. 2011), and Kiah, 2011 WL 841282. The Marrón court explained that, under G.L.c. 183, §54B, assignments of a mortgage executed before a notary public on MERS’s behalf by individuals identified as MERS assistant vice presidents are binding, and neither MERS nor the assignee must prove the authority of the signatories. Id. In light of the above considerations, Mack’s claim for declaratory judgment must fail.
B. Breach of Contract (Count II)
The complaint alleges that Mack and Wells Fargo formed a valid binding contract for a loan modification through the HAMP program when Wells Fargo made Mack an offer to apply for the modification and Mack made payments to Wells Fargo and provided it with additional information concerning her then-current financial condition and other personal information that she was under no preexisting obligation to provide. She further alleges that Wells Fargo breached that contract, and that she suffered damages as a result. Motion defendants seek to dismiss this count, arguing that the oral agreement that Mack allegedly *18 entered with Wells Fargo is unenforceable. Specifically, they argue that: 1) Mack’s alleged oral modification of the mortgage under HAMP is barred by the Statute of Frauds; 2) the parties entered into a Forbearance Agreement, not a HAMP modification, and Wells Fargo complied with the agreement’s terms; and 3) Mack’s alleged prior or contemporaneous agreements are barred by the parol evidence rule.
As to the first argument, motion defendants are correct that generally, a contract for the sale of land must comply with the Statute of Frauds. See G.L.c. 259, §1. An oral modification will not be enforced if it results in a “rewriting” of the contract or significantly changes the parties’ obligations. Rosenfeld v. Standard Bottling & Extracts Co., 232 Mass. 239, 244-45 (1919). However, oral agreements that “merely change! ] the method by which the plaintiffs [undertake] to pay their mortgage indebtedness” and do not affect the “right, title and interest in the security,” are enforceable. Siegel v. Knott, 316 Mass. 526, 529 (1944); see also Rex Lumber Co. v. Acton Block Co., 29 Mass.App.Ct. 510, 515-16 (1990) (oral modification of contract subject to Statute of Frauds may be enforced where modification concerns time of performance); McKinley Invs. v. Middleborough Land, LLC, 62 Mass.App.Ct. 616, 619-20 (2004) (oral modification may be enforced where it relates to manner of performance).
Just like the oral agreement in Siegel, the alleged HAMP modification here “did not call for any assignment of the . . . mortgage or a transfer of any interest ... in the land by virtue of [the] mortgage,” but merely sought to “change! ] the method of paying an indebtedness owed to the defendant, which was evidenced by a note . . .” Siegel 316 Mass. at 529. As Wells Fargo’s “right, title and interest in the security were unaffected by the agreement,” the alleged oral agreement is not within the Statute of Frauds. Id.
Wells Fargo next argues that Mack has no basis for alleging that Wells Fargo entered into a HAMP agreement with her because the Forbearance Agreement that Mack signed does not mention HAMP and is “on its face, not a HAMP modification." The court disagrees. The Forbearance Agreement expressly refers to the phone conversation with Mack, in which Wells Fargo allegedly offered her a modification through HAMP. This is sufficient to support Mack’s allegations at this early stage of the proceedings.
Similarly, motion defendants’ argument that the parol evidence rule bars evidence of any oral negotiations the parties engaged in prior to entering the Forbearance Agreement is unavailing. “The parol evidence rule only bars the introduction of prior or contemporaneous written or oral agreements that contradict, vary or broaden an integrated writing.” See Kobayashi v. Orion Ventures, Inc., 42 Mass.App.Ct. 492, 496 (1997). “Where an agreement is ambiguous, parol evidence is admissible to show the intention of the parties.” Cullinet Software, Inc. v. McCormack & Dodge Corp., 400 Mass. 775, 776 (1987) (internal citation omitted); see also Robert Indus., Inc. v. Spence, 362 Mass. 751, 753-54 (1973) (“When the written agreement... is in any respect uncertain or equivocal in meaning, all the circumstances of the parties leading to its execution may be shown for the purpose of elucidating, but not of contradicting or changing its terms”). The court agrees with Mack that the Forbearance Agreement’s language is unclear in that it does not explain what Wells Fargo means by “extending forbearance” and does not identify the period of the extension. See Reyes v. Wells Fargo Bank N.A., 2011 WL 30759 (N.D.Cal. 2011) (interpreting similar agreement). Accordingly, the parties’ prior oral negotiations are not barred by the parol evidence rule. Mack’s breach of contract claim survives the motion to dismiss.
C. Breach of Covenant of Good Faith and Fair Dealing (Count III)
Mack alleges that Wells Fargo breached its covenant of good faith and fair dealing by representing to her that she qualified for a HAMP loan modification, accepting payments from her, but then failing to “follow through on its contractual obligation to her to extend a HAMP loan modifications and other foreclosure alternatives under the HAMP program.” Motion defendants seek dismissal of this claim on the ground that Mack did not enter into a HAMP agreement with Wells Fargo.
Every contract includes an implied covenant of good faith and fair dealing, which provides “that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract . . .” Anthony’s Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 471 (1991) (internal quotations omitted). Because the court finds that Mack has stated a claim for breach of contract, this claim stands as well.
D. Promissory Estoppel Claim (Count IV)
The complaint alleges that Wells Fargo “made promises to Mack that she was eligible for a loan modification through the HAMP program,” that these promises “induced her to rely on them to make payments, to incur additional arrearages, to provide confidential personal and private information to Wells Fargo, and to incur other fees and expenses that would be profitable for Wells Fargo,” and that such reliance was detrimental to her. Motion defendants argue that Mack cannot reasonably rely on an oral representation that conflicts with the parties’ written contract.
Promissory estoppel may arise where there is “(1) a representation intended to induce reliance on the part of a person to whom the representation is made; (2) an act or omission by that person in reasonable reliance on the representation; and (3) detriment as a consequence of the act or omission.” Sullivan v. Chief Justice for Admin. and Mgmt. of the Trial Court, 448 *19 Mass. 15, 27-28 (2006) (internal citation omitted). For the purposes of a motion to dismiss, Mack’s allegations are sufficient to establish a promissory estoppel claim. The reasonableness of Mack’s reliance on Wells Fargo’s alleged representations as to her loan is an issue to be decided, possibly, at the summary judgment stage. Therefore, dismissal of this count is inappropriate.
E.Violation of G.L.c. 93 (Count V)
Mack’s complaint alleges that the defendants committed unfair and deceptive practices in violation of G.L.c. 93, §9. Specifically, she alleged that these practices “included the bait and switch associated with the HAMP program, communicating with Mack directly even after they had knowledge that Mack was represented by counsel, [and] continuing to advertise and schedule the foreclosure sale of Mack’s home even after the issuance of the TRO and Preliminary Injunction by this Court, which constituted civil contempt.” The complaint further alleges that the defendants’ practices in connection with the collection of Mack’s debt violated several regulations promulgated pursuant to c. 93A.
This claim survives, insofar as it is based on Mack’s allegations involving Wells Fargo’s actions with regard to servicing and management of her loan. To the extent the claim is premised on the allegations that MERS lacked authoriiy to assign and foreclose the mortgage, it must fail.
F.Violation of Civil Rights Act (Count VI)
Motion defendants argue that Mack’s claim must fail because she has not alleged a violation of any federal or state secured right or that such alleged violation was caused by any threats, intimidation, or coercion. Mack opposes, stating that “in addition to the threats to foreclose Mack’s home, the scheduling and advertising of the foreclosure sale after issuance of the TRO, [and] the scheduling of the foreclosure sale after the issuance of the preliminary injunction were done for the purpose of harassing or humiliating Mack.” She alleges that these actions are sufficient to constitute “threats, intimidation or coercion,” and that they interfered with her constitutionally protected right “to own land and to use and to improve it according to the owner’s conceptions of pleasure, comfort or profit, and the exercise of liberty and the pursuit of happiness.”
To prove a violation under the Massachusetts Civil Rights Act, Mack must show not only that motion defendants interfered or attempted to interfere with her exercise of “rights secured by the constitution or laws of the commonwealth,” but that they did so “by threats, intimidation or coercion.” G.L.c. 12, §11H; see also Bally v. Northeastern Univ., 403 Mass. 713, 717 (1989) (internal quotations omitted). “Those words [’by threats, intimidation, or harassment’] have been applied according to their natural connotation, that of forcing submission by conduct calculated to frighten, harass, or humiliate.” Smith v. Longmeadow, 29 Mass.App.Ct. 599, 603 (1990).
The alleged threats to foreclose on Mack’s home do not by themselves constitute a violation of the Act. See Buster v. Moore, Inc., 438 Mass. 635, 648 (2003), quoting Sena v. Commonwealth, 417 Mass. 250, 263 (1994) (“Generally, by itself, a threat to use lawful means to reach an intended result is not actionable under [the Act]”). “Although we must await subsequent cases to determine more exactly the actionable bounds of economic coercion under the act, economic loss occasioned by a plaintiffs own conduct, such as when the plaintiff defaults on a note and mortgage, is beyond these bounds.” Buster, 438 Mass. at 649. However, Mack has additionally alleged that the defendants disregarded court’s orders and proceeded with scheduling and advertising of the foreclosure to humiliate and harass Mack. Accepting as true the allegations in the complaint, the court concludes that Mack has alleged sufficient facts to withstand the motion to dismiss on this count.
G.Unjust Enrichment (Count VII)
In her complaint, Mack asserts that Wells Fargo was unjustly enriched by receiving mortgage payments from Mack because it “has failed to provide sufficient evidence that it is the holder or in possession of the underlying promissory note secured by Mack’s mortgage or that it has any legal entitlement to payments under the promissory note by Mack.” Wells Fargo moves to dismiss this count, asserting that it has a right to enforce the note because it has physical possession of the note endorsed in blank by Wells Fargo.[6] Specifically, Wells Fargo asserts that the note was originally given by Mack to NEMC; NEMC endorsed the note to Franklin; and Franklin then endorsed the note to Wells Fargo Bank, N.A. As a final step, the note was endorsed in blank by Wells Fargo, and the blank endorsement converted the note to “bearer paper” and made it payable to Wells Fargo. See G.L.c. 106, §3-205 (“When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed”).
As holder of the note, Wells Fargo would be entitled to all payments to be made by Mack. See G.L.c. 106, §3-301 (“ ‘Person entitled to enforce’ an instrument means . . . the holder of the instrument . . .”); First Nat’l Bank of Cape Cod v. North Adams Hoosac Sav. Bank, 7 Mass.App.Ct. 790, 797 (1979) (“As the holder of the note, [plaintiff] also would be entitled to all payments to be made by the mortgagors on the note”). To be a holder of the note, however, Wells Fargo must be in physical possession of it. See G.L.c. 106, §1-201(20) (“ ‘Holder’ with respect to a negotiable instrument, means the person in possession if the instrument is payable to bearer or, in the case of an instrument payable to an identified person, if the *20 identified person is in possession”); see also First Nat’l Bank of Cape Cod, 7 Mass.App.Ct. at 797 (asserted assignee of mortgagor’s note and mortgage could not be a holder of the note until it had possession).
At the hearing, the parties disagreed as to whether Wells Fargo is in possession of a complete copy of the promissory note.[7] The court finds that the issue of Wells Fargo’s possession of the note should be clarified in discovery. At this early stage of the proceedings, Mack set forth sufficient facts to support an entitlement to relief with respect to the unjust enrichment count.
2. Motion for a More Definite Statement of Class Allegations
Motion defendants also move this court, pursuant to Mass.R.Civ.P. 12(e), for an order requiring Mack to amend her complaint to include a more definitive statement of the class allegations, so they can determine whether they have a right to federal jurisdiction. Under 28 U.S.C. §1441(a), “any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.” Pursuant to CAFA, “[t]he district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant [and] . . . the number of members of all proposed plaintiff classes in the aggregate is [not] less than 100.” 28 U.S.C. §1332(d).
The amended complaint states that Mack “brings this action... on behalf of a class or classes consisting of Massachusetts residential mortgagors of Wells Fargo.” It further states that “all members of the class will be similarly affected by the judgment sought in this action,” and that “although Mack does not know the exact number of members of the proposed class, [she] believes that there are thousands of them.” In its Memorandum and Order on Plaintiffs Motion to Remand and Defendants’ Motion to Dismiss, the District Court disagreed with the defendants’ interpretation of this language. Specifically, the District Court stated that “[a]lthough plaintiffs class definition is far from precise, it is clear that it encompasses something less than all residential mortgagors of Wells Fargo in Massachusetts.”[8] Accordingly, the court found that “defendants have failed to establish a reasonable probability that the amount in controversy exceeds $5 million, and that remand is therefore appropriate.” The court noted that “this disposition works no great prejudice on defendants, as they may remove to federal court at a later time if its becomes apparent [through a subsequent amended pleading] that CAFA’s requirements are in fact met.”
This court finds that the motion defendants should be allowed to evaluate their right to federal jurisdiction. Accordingly, the court orders that Mack amend her complaint to include a more definite statement of the class allegations.
ORDER
For the foregoing reasons, it is hereby ORDERED that defendants Wells Fargo, MERS, and MERSCORP’s Motion to Dismiss is ALLOWED as to Count I, and DENIED as to all other counts. The Motion for a More Definite Statement is ALLOWED.

MERS is a national electronic registry for tracking servicing rights and beneficial ownership interests in mortgage loans. It also acts as nominee for servicers and beneficial owners of mortgage loans, and their successors and assigns. MERSCORP is MERS’s parent corporation.

On January 6, 2011, Mack filed a verified complaint for contempt against Wells Fargo, Harmon Law, and Commonwealth Auction for violation of the TRO and preliminary injunction. This court (Curran, J.) issued summonses of contempt to Wells Fargo, Harmon Law and Commonwealth Action on January 26, 2011.

In her opposition, Mack also argues that Count I should not be dismissed because: 1) Wells Fargo is not a holder of the original promissory note; 2) in the absence of authorization from NEMC or specific court order authorizing the conveyance of title of the mortgage to Wells Fargo, the interest held by MERS is subject to restrictions upon its rights of alienation; and 3) Wells Fargo, as assignee of MERS mortgage, does not hold an interest in Mack’s property that is sufficient to foreclose because assignments by parties holding bare legal title convey no interest to the assignor. As to the first argument, whether Wells Fargo is in fact a holder of the promissory note has no bearing on the determination of whether MERS can assign and foreclose a mortgage in the absence of authorization from NEMC. The other two arguments fail in the light of the court’s conclusion that MERS, as nominee and holder of bare legal title, may validly assign the lender’s equitable interest in the mortgage.

This court takes judicial notice of a corporate resolution on file at the Norfolk Registry of Deeds (attached as Exhibit A to the Motion to Dismiss). Pursuant to the resolution, MERS’s Board of Directors had made Attorney Harmon assistant secretary and vice president of MERS and authorized him to “execute any and all documents necessary to foreclose upon the property securing any mortgage loan registered on the MERS_ system, including . . . assignments of mortgage ...”

The defendants claim to have provided Mack with a fully executed and endorsed copy of the promissory note, which Mack attached to her complaint.

Specifically, Mack asserted that the note provided to her by Wells Fargo and that she attached to her complaint is missing the third page. The defendants contend that there are only two pages to the note, and it is attached in its entirety.

The defendants contended that the numerosity requirement was satisfied because “as of January 24, 2011, Wells Fargo held and serviced more than 500 residential mortgage loans in Massachusetts.” They also argued that the amount-in-controversy was satisfied because “the total aggregate unpaid balance of the residential mortgage loans ... exceeds $25,000,000.00.”