Troy, Paul E., J.
The plaintiff, Lincoln G. Latham (“Latham”), sued Homecomings Financial LLC f/k/a Homecomings Financial Network, Inc. (“Homecomings”) and Value One Mortgage (“Value One”) alleging that they engaged in a “bait and switch” scheme under which Latham was fraudulently induced to execute an adjustable rate note secured by a mortgage on his principal residence. Count IV of Latham’s complaint alleges that Homecomings violated Chapter 93A by failing to negotiate with him in good faith to avoid foreclosure. This matter is before the court on Homecomings’ motion for summary judgment pursuant to Mass.RCiv.P. 56. For the following reasons, Homecomings’ Motion for Summary Judgment on Count IV is ALLOWED.
BACKGROUND
Viewed in the light most favorable to the plaintiff as the non-moving party, the undisputed facts as revealed by the summary judgment record are as follows.[2] Latham purchased property at 29 Wildwood Street in Dorchester, Massachusetts (“the Property”) in 1999, giving a thirty-year fixed rate mortgage to Ocwen Financial Services. Latham refinanced the mortgage in 2001, obtaining a loan from Ameriquest Mortgage. Early in 2002, Latham was introduced to Scott Almedia (“Almedia”), who at that time worked as a mortgage broker for Value One. Latham inquired about refinancing the Ameriquest mortgage. Latham retained Keith Greenaway (“Greenaway”) to assist him during the refinancing process. When Almedia left Value One, Dean Saxonis (“Saxonis”), also a mortgage broker at Value One, contacted Latham. Saxonis informed Greenaway that Latham did not qualify for a fixed rate mortgage. Greenaway then began negotiating on Latham’s behalf with Saxonis. Saxonis proposed that if Latham refinanced into an adjustable rate mortgage with Homecomings, a corporation that regularly extends credit to consumers, he would be able to refinance into a fixed rate note and mortgage after six months.
On November 20, 2002, Homecomings gave a loan to Latham secured by a mortgage on the Property. On June 5, 2003, Latham refinanced that loan with Homecomings. The note for the refinanced loan lists the principal as $308,750, with a fixed interest rate of 7.3750% for the first two years. Thereafter, the note was governed by an adjustable interest rate to be calculated by adding 7.75% to the LIBOR Index. Latham believed that the new note he was signing contained a fixed interest rate. However, Latham initialed the first page of the note, which began with the phrase “ADJUSTABLE RATE NOTE." Latham also initialed the page describing how the note’s interest rate change would be calculated. Section 12 of the mortgage provides in relevant part:
Extensions of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower ... shall not operate to release the liability of Borrower . . . Any forbearance by Lender in exercising any right or remedy, including, without limitation, Lender’s acceptance of payments ... in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.
Neither the note nor the mortgage executed by Latham contains a provision requiring Homecomings to negotiate with Latham in order to avoid foreclosure. Homecomings’ rights and obligations with respect to foreclosure are set forth in section twenty-two of the mortgage, which provides in relevant part:
Lender shall give notice to Borrower prior to acceleration following Borrower’s breach of any covenant or agreement in this Security Instrument . . . The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in this notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law.
Latham initialed this page of the mortgage.
On May 31, 2004, Latham contacted Homecomings and stated that he had lost a tenant at the Property and could not make his mortgage payments. Home *4 comings established a repayment plan to allow Latham to pay off his delinquency over time. However, Latham breached the repayment plan on August 14, 2004 by failing to make a payment due on the 7th of the month. Latham told Homecomings that he could not make the payment because he had to pay for insurance on the Property. Latham defaulted on the loan on December 1, 2004.
On December 29, 2004, Latham admitted that he was in default but stated that he was out of work due to an injury. Latham promised to make a payment due in November by January 7, 2005. Latham did not make a payment until January 14. On January 22, Latham called Homecomings to discuss his loan. Homecomings advised him that a new repayment plan was necessary because he was many months behind in his payments. Homecomings gave Latham a workout package requesting specific financial information and supporting documentation so that Homecomings could determine whether he qualified for alternatives to foreclosure. On February 22, 2005, Homecomings reviewed Latham for a possible loan workout, but determined that he did not qualify for a foreclosure alternative based on his personal financial situation and the amount of his delinquency. Homecomings concluded that Latham did not have sufficient income to make payments on the loan to enable him to keep the Property. On February 25, 2005, Homecomings provided Latham with a reinstatement figure, the exact amount necessary to bring his loan current. On March 21, Homecomings’ Loss Mitigation Department spoke by phone to Latham, who stated that he had no income. On May 10, 2005, Latham informed Homecomings that he had an increase in income because he was able to rent the Property. Homecomings advised Latham to submit an updated workout package with this new information.
On May 12, 2005, Latham filed Bankruptcy Petition No. 2005-14371 with the U.S. Bankruptcy Court for the District of Massachusetts Eastern Division. On June 23, 2005, the Chapter 13 Trustee filed a motion to dismiss on the ground that Latham defaulted on his payment plan by failing to make scheduled payments. Latham ceased making any payments on the loan to Homecomings in September of 2005. On May 11, 2006, Homecomings’ motion for relief from the automatic stay was granted by the Bankruptcy Court. On August 7, 2006, the Bankruptcy Court dismissed Latham’s bankruptcy case for failure to make post-petition plan payments. On October 24, 2006, Homecomings received an incomplete workout package from Latham which failed to include necessary documentation concerning rental income, Latham’s wife’s unemployment income, and other requested information. Homecomings’ attempts to contact Latham failed because his home phone number was disconnected. On November 14, Latham’s representative informed Homecomings that Latham could only contribute $3,000 to a workout plan. Homecomings responded that $3,000 was not sufficient for a workout.
On November 15, 2006, Latham filed a second bankruptcy petition, No. 06-14261, with the U.S. Bankruptcy Court for the District of Massachusetts Eastern Division. Homecomings again moved for relief from the automatic stay. Latham failed to make regular post-petition payments to Homecomings, which moved to dismiss the bankruptcy on that ground. Latham objected to the motion to dismiss and on July 24, 2007, filed an Adversary Complaint against Homecomings and Value One. The Bankruptcy Court dismissed the bankruptcy case and closed Latham’s Adversary Complaint on August 2, 2007. On December 5, 2007, Latham informed Homecomings that he could pay $1,000 per month toward his mortgage. Homecomings rejected this offer because Latham’s mortgage obligated him to pay more than $3,000 per month exclusive of escrow amounts, and his delinquency exceeded $104,000. Homecomings advised Latham that a down payment of $36,000 was necessary for a workout.
On December 31, 2007, Latham filed a third bankruptcy petition, No. 07-18269, with the U.S. Bankruptcy Court for the District of Massachusetts Eastern Division. On March 20, 2008, the Bankruptcy Court granted Homecomings’ motion for relief from the automatic stay. On May 7, 2008, Latham informed Homecomings that he was unable at that time to pay anything toward the mortgage. On May 8, Latham filed this lawsuit against Homecomings and Value One and sought a temporary restraining order to enjoin Homecomings from foreclosing on the Property. This Court (Muse, J.) initially granted a temporary restraining order but ultimately denied Latham’s request for in-junctive relief after a hearing on May 20. Having determined that Latham did not qualify for any loss mitigation alternatives to foreclosure, Homecomings held an auction of the Property on May 30, 2008 and was the highest bidder at sale. Homecomings continues to pay the real estate taxes and insurance for the Property and is unable to market it because it is still occupied.
Homecomings moved to dismiss all counts of Latham’s complaint pursuant to Mass.R.Civ.P. 12(b)(6). In a Memorandum of Decision and Order dated February 26, 2009, this Court (Troy, J.) dismissed Latham’s negligence, promissory fraud, Truth in Lending, unjust enrichment, and malpractice claims based on the statute of limitations. This Court also dismissed as time-barred so much of the Chapter 93A claim as was based on the execution of the mortgage, but permitted Latham to proceed with a 93A claim based on Homecomings’ alleged failure to negotiate in good faith in an effort to avoid foreclosure.
DISCUSSION
Summary judgment will be granted where there are no genuine issues of material fact and the moving *5 parly is entitled to judgment as a matter of law. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Mass.R.Civ.P. 56(c). The party moving for summary judgment bears the burden of affirmatively showing that there is no triable issue of fact. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). A party moving for summary judgment who does not have the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case, or by showing that the nonmoving parly has no reasonable expectation of proving an essential element of its case at trial. Kourouvacilis, 410 Mass. at 716. Once the moving party “establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact.” Pederson, 404 Mass. at 17.
I. DUTY TO NEGOTIATE IN GOOD FAITH
Homecomings contends that it is entitled to judgment as a matter of law on Count IV because Latham has no reasonable expectation of proving that it violated Chapter 93A by failing to negotiate in good faith a workout of the loan. In the absence of an express undertaking to negotiate in good faith, the courts have been reluctant to impose a common-law duty to do so. Carney v. Shawmut Bank, N.A., 2008 WL 4266248 at *3 (Mass.App.Ct. unpublished opinion); Schwanbeck v. Federal-Mogul Corp., 31 Mass.App.Ct. 390, 396 (1991), rev’d on other grounds, 412 Mass. 703 (1992). Here, the note and mortgage executed by Latham do not contain any express obligation by Homecomings to negotiate prior to foreclosure.
Parol evidence is not generally admissible to vaiy the unambiguous terms of an integrated written contract. Winchester Gables, Inc. v. Host Marriott Corp., 70 Mass.App.Ct. 585, 591 (2007), rev. den., 451 Mass. 1103 (2008); Vakil v. Anesthesiology Assoc. of Taunton, Inc., 51 Mass.App.Ct. 114, 120, rev. den., 434 Mass. 1104 (2001). A fully integrated contract is a statement which the parties have adopted as a complete and exclusive expression of their agreement. Starr v. Fordham, 420 Mass. 178, 188 n.8 (1995); Cabot v. Cabot, 55 Mass.App.Ct. 756, 763 (2002). The determination of whether the parties intended their written contract to be a statement of their complete agreement is a preliminary determination to be made by the court. Carlo Bianchi & Co., Inc. v. Builders’ Equip. & Supp. Co., 347 Mass. 636, 642 (1964); Cabot v. Cabot, 55 Mass.App.Ct. at 763; Ryder v. Williams, 29 Mass.App.Ct. 146, 149 (1990). The parties may present proof beyond the writing itself, including evidence of prior negotiations. Antonellis v. Northgate Constr. Corp., 362 Mass. 847, 849 (1973); Cabot v. Cabot, 55 Mass.App.Ct. at 763; Ryder v. Williams, 29 Mass.App.Ct. at 149.
Where a writing shows on its face that it contains all the essential terms that are necessary to constitute a contract, it is presumed that the parties intended it to be a complete and final statement of the whole transaction. Gifford v. Gifford, 354 Mass. 247, 249 (1968); Bendetson v. Coolidge, 7 Mass.App.Ct. 798, 803 (1979). See, e.g., Carney v. Shawmut Bank, N.A., 2008 WL 4266248 at *1-2 (Mass.App.Ct. unpublished opinion) (despite absence of integration clause, promissory note was fully integrated where it contained all essential agreements of a loan transaction). Here, the note and mortgage executed by Latham contain all the essential and material terms necessary for a loan transaction, and constitute a completely integrated agreement. Latham has failed to produce any evidence raising a genuine issue of material fact with respect to whether the note and mortgage are a complete and exclusive expression of his agreement with Homecomings. Accordingly, the parol evidence rule bars consideration of any evidence proffered to impose additional duties on Homecomings with respect to foreclosure. While Homecomings was free to negotiate with Latham, it had no obligation to do so, and it was equally free to exercise its foreclosure rights under the mortgage. See Hogan v. Riemer, 35 Mass.App.Ct. 360, 366-67 (1993) (summary judgment proper on Chapter 93A claim where despite vague assurances that it did not want plaintiffs house and would work with her, bank had legal right to foreclose); Carney v. Shawmut Bank, N.A., 2008 WL 4266248 at *3 (summary judgment proper on Chapter 93A claim where integrated loan documents contained no obligation to negotiate debt restructuring in good faith).
Nonetheless, Latham argues that because Homecomings did in fact voluntarily engage in negotiations with him to avoid foreclosure, it had a duly to do so in good faith which it then breached. Cf. Kattar v. Demoulas, 433 Mass. 1, 13 (2000) (mortgage foreclosure which is legal may still be deemed to be unfair or deceptive under the circumstances if committed in bad faith). Lack of good faith is more than poor judgment or negligence; rather, it involves a dishonest purpose, fraud, conscious doing of wrong, or breach of a known duly through motive of self-interest or ill will. Spiegel v. Beacon Participations, Inc., 297 Mass. 398, 416 (1937); Schwanbeck v. Federal-Mogul Corp., 31 Mass.App.Ct. at 404. Here, Latham has failed to introduce admissible evidence creating a genuine issue of material fact with respect to whether Homecomings acted in bad faith in its negotiations prior to the foreclosure. Cf. Chartrand v. Newton Trust Co., 296 Mass. 317, 320 (1936) (mortgagor bears burden of showing that mortgagee conducted- foreclosure improperly or in bad faith). The undisputed facts in the summary judgment record show that Homecomings worked with Latham to enable him to stay current on his mortgage payments but that, despite these efforts, Latham lacked sufficient income to retain the Property. The record is devoid of evidence suggesting dishonesty, ulterior motive, or ill will. Cf. Kattar v. Demoulas, 433 Mass. at 13 (mortgage foreclosure *6 violated 93A where conducted in retribution for mortgagor’s refusal to testify in mortgagee’s favor in unrelated lawsuit). Because the mortgage permits Homecomings to accelerate the note and foreclose on the Properly without first negotiating with Latham, and because Latham has not proffered any evidence of bad faith in the negotiations voluntarily undertaken, he has no reasonable expectation of establishing that Homecomings’ conduct was unfair or deceptive under Chapter 93A.
II. PRESUMPTIVE UNFAIRNESS OF LOAN
In addition, Latham has no reasonable expectation of proving that Homecomings violated Chapter 93A because his loan was presumptively unfair. The combination of independently legal terms may render a loan unfair under Chapter 93A if the combination constitutes an unsound lending practice and in essence dooms the borrower to foreclosure. Commonwealth v. Fremont Inv. & Loan, 452 Mass. 733, 743, 747 (2008). Thus, a violation of Chapter 93A was likely with respect to a subprime mortgage loan which contained the following four characteristics, rendering it unfair:
(1) the loans were ARM [adjustable rate mortgage] loans with an introductory rate period of three years or less; (2) they featured an introductoiy rate for the initial period that was at least three percent below the fully indexed rate; (3) they were made to borrowers for whom the debt-to-income ratio would have exceeded fifty percent had [the lender] measured the borrower’s debt by the monthly payments that would be due at the fully indexed rate rather than under the introductoiy rate; and (4) the loan-to-value ratio was one hundred percent, or the loan featured a substantial prepayment penalty ... or a prepayment penalty that extended beyond the in-troductoiy rate period.
Id. at 739.
Latham’s loan does not contain the combination of features deemed unfair in the Fremont case. The sum-maiy judgment record is devoid of evidence that Latham’s debt-to-income ratio would have exceeded fifty percent had Homecomings measured his debt by the fully indexed rate or that the loan-to-value ratio was one hundred percent. Moreover, section five of the note states that Latham “may make a full Prepayment or partial Prepayment without paying any Prepayment charge.” Nor has Latham proffered evidence that the combination of features contained in his note constitutes an unsound lending practice which in essence dooms the borrower to foreclosure. Thus, Latham has no reasonable expectation of proving that Homecomings violated Chapter 93A by originating a presumptively unfair loan.
III. ABSENCE OF DISCOVERY
Finally, there is no merit to Latham’s objection in his brief that summaiy judgment is improper because there has been no discoveiy in this case and there is thus no appropriate record.
A party who cannot, without further discovery, present by affidavit facts essential to justify its opposition to a summary judgment motion must request a continuance pursuant to Mass.R.Civ.P. 56(f) and file an affidavit in explanation. The party seeking a continuance must make a minimal showing that there is a factual basis to support his complaint. The Alphas Co., Inc. v. Kilduff, 72 Mass.App.Ct. 104, 108, rev. den., 452 Mass. 1105 (2008). The parly’s affidavit must state the specific discoveiy desired and must show that the information sought would raise a material factual question in the context of the pending summaiy judgment motion. Aronson v. Commonwealth, 401 Mass. 244, 255 (1987), cert. den., 488 U.S. 818 (1988); Alphas Co., Inc. v. Kilduff, 72 Mass.App.Ct. at 109. The nonmoving parly must show to the best of his abilify what facts are within the movant’s exclusive knowledge or control, and what steps have been taken to obtain the desired information pursuant to the discovery procedures under the Rules of Civil Procedure. Alphas Co., Inc. v. Kilduff, 72 Mass.App.Ct. at 109-10. The filing of such an affidavit is a preliminary requirement for a continuance under Rule 56(f). Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 439 Mass. 387, 401 (2003); Alphas Co., Inc. v. Kilduff, 72 Mass.App.Ct. at 110.
Here, only four months elapsed between the denial of Homecomings’ motion to dismiss the Chapter 93A claim and the filing of its motion for summaiy judgment. It does not appear that either party requested discoveiy from the other during that period. While it is perhaps uncommon for the court to rule on a summaiy judgment motion prior to any discoveiy in a case, Rule 56(b) expressly states that a defendant may move for summaiy judgment “at any time.” Latham has not filed a Rule 56(1) motion and affidavit explaining what discoveiy he needs to avoid summaiy judgment on the Chapter 93A claim, and why he has not yet pursued it. It does not appear that the facts necessaiy to oppose summaiy judgment lie within Homecomings’ exclusive knowledge or control. Insofar as Latham seeks to show a duty of pre-foreclosure good faith negotiation arising from a source other than the relevant loan documents, he himself was privy to any conversations or promises by Homecomings to so negotiate. Yet, he has failed to file an affidavit based on his personal knowledge which addresses this issue. Nor has he filed an affidavit based on personal knowledge contradicting Homecomings’ account of its pre-foreclosure negotiations.[3]
Latham’s failure to invoke Rule 56(f) constitutes a waiver of the right to further discoveiy before the issuance of a ruling on Homecomings’ motion for summaiy judgment. See Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 439 Mass. at 401. In the absence of a Rule 56(f) motion and affidavit, Latham’s objection *7 that discovery has not taken place is unavailing to forestall summary judgment based on the undisputed record produced by Homecomings.
ORDER
For the foregoing reasons, it is hereby ORDERED that Homecomings Financial Network, Inc.’s Motion for Summary Judgment on Count IV be ALLOWED.

 Latham’s motion to strike the affidavit of Homecomings Portfolio Specialist Bill Haughton lacks merit. Pursuant to Mass.R.Civ.P. 56(e), affidavits submitted in connection with a motion for summary judgment must be made on personal knowledge by one competent to testify as to the matter at issue, and must set forth facts that are admissible in evidence. An affidavit which fails to meet these mandatory requirements is inadequate to defeat summary judgment and subject to a motion to strike. See Madsen v. Erwin, 395 Mass. 715, 719-21 (1985); Fowles v. Lingos, 30 Mass.App.Ct. 435, 439 (1991). Haughton avers that he is the Homecomings employee responsible for overseeing Latham’s claim and that he reviewed Homecomings’ books and records relating to Latham’s account. His affidavit therefore is supported by sufficient personal knowledge to meet the requirements of Rule 56(e). See Ecclesiastes 3:1, Inc. v. Cambridge Sav. Bank, 10 Mass.App.Ct. 377, 380-81 (1980). Latham’s motion to strike must be DENIED.

 Although a verified complaint may be treated as an affidavit for purposes of summary judgment, Latham’s complaint does not create a genuine issue of material fact on these critical issues.