Brassard, Raymond J., J.
The plaintiff Paul Adam-son (“Adamson”) brought this action against defendants (1) Mortgage Electronic Registration Systems, Inc. (“MERS’j; (2) Deutsche Bank National Trust Company as trustee of Fremont Home Loan Trust Series 2006-3 (“Deutsche Bank”); and (3) Wells Fargo Bank, N.A. d/b/a America’s Servicing Company (“America’s Servicing”) (collectively the “Defendants”).[2]The matter is before the court on the Defendants’ motion to dismiss the complaint pursuant to Mass.R.Civ.P. 12(b)(6) and Adamson’s motion to amend pursuant to Mass.R.Civ.P. 15. For the reasons stated below, Adamson’s motion to amend is ALLOWED. Also, for the reasons stated below, the Defendants’ motion to dismiss is ALLOWED with respect to Counts I-IV and ALLOWED in part and DENIED in part with respect to Counts V-VI.
BACKGROUND
I. Procedural History
On February 23, 2011, Adamson filed a complaint in the Superior Court seeking injunctive relief to prevent the Defendants from transferring property located at 35 Harold Street in Boston (the “Property”) and to challenge the validity of the foreclosure. In the complaint, Adamson named the following causes of action: (1) breach of the covenant of good faith and fair dealing; (2) unjust enrichment; (3) negligence; (4) the Defendants are not entitled to foreclose under the Uniform Commercial Code; (5) predatory home loan practices in violation of G.L.c. 183C, §15(b)(2); and (6) infliction of emotional distress. This court issued a temporary restraining order on February 23, 2011 (Brassard, J.) [28 Mass. L. Rptr. 153). On March 23, *34 2011, this court denied Adamson’s motion for a preliminary injunction and lifted the temporary restraining order on the grounds that MERS as the mortgagee of record appeared to have the authority to foreclose on the Properly (Brassard, J.).
The Defendants filed a motion to dismiss all counts of Adamson’s complaint on April 14, 2011, arguing that Adamson failed to state a claim upon which relief can be granted pursuant to Mass.R.Civ.P. 12(b)(6). A hearing was held on the motion on July 6, 2011. At the hearing, Adamson indicated that he wanted to amend the complaint to include a claim for violation of G.L.c. 93A. In addition, Adamson sought leave to amend his claim for wrongful foreclosure in light of the Superior Court case Eaton v. Federal Nat’l Mortgage Ass’n, 11-1382, slip op. (Mass.Super.Ct. June 17, 2011) (McIntyre, J.) (appeal pending), and supporting cases.
The court stayed ruling on the Defendants’ motion to dismiss and granted Adamson leave to (1) submit a proposed amended complaint to include a claim for violation of G.L.c. 93A; and (2) present arguments that Count IV of the complaint should not be dismissed because a party must hold both the mortgage and the note to foreclose under Massachusetts law.
On August 29, 2011, Adamson moved to amend the complaint pursuant to Mass.R.Civ.P. 15. Adamson now alleges the following causes of action: (1) breach of the covenant of good faith and fair dealing; (2) promissory estoppel; (3) negligent misrepresentation; (4) unjust enrichment; (5) wrongful foreclosure based on bad faith and lack of standing; and (6) unfair and deceptive business practices under G.L.c. 93A. The Defendants oppose Adamson’s proposed amended complaint based on futility because they argue it still fails to state a claim under Mass.R.Civ.P. 12(b)(6).
II. Statement of Facts in the Original Complaint
Adamson’s original complaint alleges the following facts. On August 9, 2006, Adamson obtained a mortgage loan originated by Fremont and executed a promissory Note (“Note”). The mortgage loan was secured by a Mortgage (“Mortgage”) on the Property. The Mortgage was in the amount of $444,000.00 with a fixed rate loan at 8.5% interest with a balloon payment after thirty years. The payments of principal and interest were $3,191.21 for thirty years with a payment of $370,912.10 due on September 1,2036. The Mortgage was the result of a refinancing of the Property. The Property is currently occupied by Adamson and serves as Adamson’s family home.
The complaint alleges that MERS claimed to be the holder of the Mortgage and the Note for the benefit of Deutsche Bank. America’s Servicing serviced the Mortgage. Adamson relied on communications from America’s Servicing with respect to payments, working out forbearance agreements, and negotiating mortgage modifications. On August 11, 2010, MERS held a foreclosure auction. MERS planned to transfer the Property to the successful bidder on or about February 25,2011.
III. Additional Facts Added in the Proposed Amended Complaint
Adamson’s proposed amended complaint alleges the following additional facts. Adamson attempted to negotiate a mortgage modification with America’s Servicing on three different occasions and also sought to negotiate a pre-foreclosure sale. None of the attempted modifications was successful. The foreclosure on the Property was postponed on several occasions while modifications were being attempted. After denying the request for a pre-foreclosure sale, America’s Servicing stated “(T)here may be alternative options available based on agency or investor guidelines or approval.”
The complaint states that upon information and belief, America’s Servicing was not negotiating a modification in good faith nor considering any alternative options. Further, in the past several years, Deutsche Bank and other lenders have rushed to foreclose on mortgages in Massachusetts without conducting appropriate due diligent investigations into whether the mortgage was in the process of modification.
The last Written Denial Letter (“Denial Letter”) from America’s Servicing concerning Adamson’s request for a mortgage modification was dated August 10, 2010. Adamson was told that he would have thirty calendar days from the date of the notice to contact America’s Servicing to discuss the reasons for non-approval for a Home Affordable Modification Program (“HAMP”) modification or to discuss alternative loss mitigation options.
The Denial Letter is attached to the proposed amended complaint as Exhibit B. The Denial Letter states, “we are unable to adjust the terms of your mortgage” and are “unable to offer you a Home Affordable Modification.” In pertinent part it reads:
You have 30 calendar days from the date of this notice to contact America’s Servicing Company to discuss the reasons for non-approval for a HAMP modification or to discuss alternative loss mitiga-tions options that may be available to you. Your loan maybe referred to foreclosure during this time, or any pending foreclosure action may continue. However, if allowed by state law and investor guidelines, no foreclosure sale will be conducted and you will not lose your home during this 30-day period.
The foreclosure auction took place the next day on August 11, 2010. Adamson states that if the Denial Letter had been received earlier or if the Defendants had waited thirty days, he could have taken steps to prevent the foreclosure.
DISCUSSION
For a plaintiff to survive a motion to dismiss pursuant to Mass.R.Civ.P. 12(b)(6), the complaint must set forth the grounds of the plaintiffs entitlement to relief with more than mere “labels and conclusions.” *35 Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). The factual allegations in the complaint do not need to be detailed, however, they “must be enough to raise a right to relief above the speculative level . . . [based] on the assumption that all the allegations in the complaint are true . . .” Id. (quoting Twombly, 550 U.S. at 555). At the pleading stage, Mass.R.Civ.P. 12(b)(6) requires factual “ ‘allegations plausibly suggesting (not merely consistent with)’ an entitlement to relief’ to show that the complaint “possesses enough heft to ‘sho[w] that the pleader is entitled to relief.[3] Id. (quoting Twombly, 550 U.S. at 557).
I. In Count I, Adamson has failed to state a claim for breach of the covenant of good faith and fair dealing because he has not offered facts to plausibly suggest that he was denied any right under Mortgage.
Adamson alleges that America’s Servicing violated the covenant of good faith and fair dealing by: (1) promising, representing, and/or conducting business in such a way as to cause Adamson to believe that his home was not at risk of imminent foreclosure while a mortgage modification was being negotiated; (2) misrepresenting its intent to foreclose immediately on the Property, thus cutting off the opportunity for Adamson to prevent the foreclosure; and (3) failing to act in good faith. Adamson also alleges that MERS and Deutsche Bank violated the covenant by failing to conduct a reasonable, diligent, and good faith inquiry as to the status of his modification before conducting the foreclosure.
There is an implied covenant of good faith and fair dealing between parties to a contract, which requires “that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.” Blank v. Chelmsford OB/GYN, P.C., 420 Mass. 404, 407 (1995) (quoting Anthony’s Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 471-72 (1991)). The scope of the covenant is no broader than the contract that governs the particular relationship. See T.W. Nickerson, Inc. v. Fleet Nat’l Bank, 456 Mass. 562, 570 (2010). The covenant does not “create rights and duties not otherwise provided for in the existing contractual relationship, as the purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance.” Id. (quoting Uno Rests., Inc. v. Boston Kenmore Realty Corp., 441 Mass. 376, 385 (2004)). There is apresumption that all parties act in good faith and “the plaintiff bears the burden of presenting evidence of bad faith or an absence of good faith.” Id. at 574.
Based on the facts in the proposed amended complaint, America’s Servicing was under no legal obligation to modify Adamson’s Mortgage or to negotiate a modification. See FAMM Steel, Inc. v. Sovereign Bank, 571 F.3d 93, 100-01 (1st Cir. 2009). Neither the Mortgage nor the Note contains a duty to negotiate a modification, stay any impending foreclosure proceeding, or offer a mortgage modification. “The duty of good faith and fair dealing concerns the manner of performance.” Uno Rests., Inc. v. Boston Kenmore Realty Corp., 441 Mass. 376, 385 (2004). Because Adamson has not offered facts to plausibly suggest that the Defendants failed to perform under the terms of the contract or that they injured his rights under the contract, he has failed to state a claim for breach of the covenant of good faith and fair dealing.[4] See id.
II. In Count II, Adamson has failed to state a claim for promissoiy estoppel.
In Count II of the proposed amended complaint, Adamson added a cause of action for promissoiy estoppel. Adamson alleges that he (1) reasonably relied on America’s Servicing’s representations that it would attempt to work with him subject to investor guidelines and that he could continue to discuss alternative loss mitigation options; and (2) his reliance was reasonable in light of America’s Servicing’s continuing requests for documents in processing the mortgage modification and its representations regarding working with him. Adamson alleges that he was harmed by his reliance because he otherwise could have taken actions to stop the foreclosure. Based on the allegations in the proposed amended complaint, Adamson has failed to state a claim for promissory estoppel.
To state a claim for promissoiy estoppel, the plaintiff must establish that “(1) a promisor makes a promise which he should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee, (2) the promise does induce such action or forbearance, and (3) injustice can be avoided only by enforcement of the promise.” Loranger Constr. Corp. v. E.F. Hauserman Co., 6 Mass.App.Ct. 152, 154 (1978). Reliance on the promise must have been reasonable. See Rhode Island Hosp. Trust Nat’l Bank v. Varadian, 419 Mass. 841, 850 (1995). Also, liability will only result if the plaintiff suffers substantial detriment. Loranger, 6 Mass.App.Ct. at 159 n.4.
First, Adamson’s proposed amended complaint and the Denial Letter do not state that America’s Servicing promised to continue modification negotiations or promised that foreclosure would not occur. At best, America’s Servicing promised that (1) Adamson could contact America’s Servicing to discuss the reasons for his modification denial and any “alternative loss mitigation options that may be available"; and (2) the foreclosure would not occur for thirty days if allowed by state law and investor guidelines. Adamson does not allege that he attempted to contact America’s Servicing after the receipt of the Denial Letter or that state law and investor guidelines allowed the foreclosure to be stayed. In addition, the Denial Letter makes clear that “fy]our loan may be referred to foreclosure *36 during this time, or any pending foreclosure action may continue.”
Also, the Denial Letter unambiguously states that Adamson’s request for a mortgage modification had been denied. It did not direct Adamson to submit additional documents or indicate that America’s Servicing would work proactively to find alternative loss mitigation options. Even if America’s Servicing had stayed foreclosure in the past while the parties were negotiating a modification, Adamson has failed to allege anything that indicates there were ongoing negotiations.
Further, Adamson does not offer facts to suggest that he reasonably relied on any promise from America’s Servicing. Because the Denial Letter unambiguously states that Adamson had been denied a mortgage modification, that foreclosure could occur at any time, and that Adamson could discuss alternative options that may be available to him, it would have been unreasonable to expect that under no circumstances would the Property be foreclosed on for thirty days.
Lastly, to succeed on an estoppel theory, “it must be shown that one has been induced by the conduct of another to do something different from what otherwise would have been done and that harm has resulted.” Lumbermens Mut. Cas. Co. v. Offices Unlimited, Inc., Fed. Ins. Co., 419 Mass. 462, 468 (1995). Adamson only vaguely alleges that he could have taken other steps to prevent the foreclosure but does not offer any specific examples.
III. In Count III, Adamson has failed to state a claim for negligent misrepresentation because he has not alleged any false information supplied by the Defendants.
In Count III of the proposed amended complaint, Adamson has added a claim for negligent misrepresentation. Adamson alleges that America’s Servicing: (1) misrepresented that it would act in good faith on his application for a modification; (2) misrepresented that it would not imminently foreclose until it fully considered his request for a mortgage modification and other loss mitigation options; (3) failed to exercise reasonable care and competence in communicating to him that despite engaging in a modification process, and contrary to its prior statements and actions, it would move forward with the foreclosure; and (4) knew or should have known that he would rely on its representations concerning applications for loan modifications and postponement of foreclosure sale dates. Adamson further alleges that he suffered pecuniary loss as a result of America’s Servicing’s actions.
To succeed on a claim for negligent misrepresentation, the plaintiff must show that the defendant (1) “in the course of his business”; (2) “supplied false information for the guidance of others”; (3) “in their business transactions”; (4) “causing and resulting in pecuniary loss to those others”; (5) "by their justifiable-reliance on the information”; and (6) that the defendant “failed to exercise reasonable care or competence in obtaining or communicating the information.” Gossels v. Fleet Nat’l Bank, 453 Mass. 366, 372 (2009).
Adamson has failed to state a claim for negligent misrepresentation because the statements he attributes to the Defendants are either not supported by the facts provided or are not false. First, nowhere in the proposed amended complaint does Adamson allege that America’s Servicing represented to him that it would act in good faith on his application for a mortgage modification.
Second, there are no facts to suggest that America’s Servicing represented that it would not imminently foreclose until it fully considered Adamson’s request for a modification and other loss mitigation options. The foreclosure took place after the date of the Denial Letter, indicating that America’s Servicing considered Adamson’s last modification request before foreclosing. Adamson does not allege that he contacted America’s Servicing after receipt of the Denial Letter or that he requested another modification after the denial of his latest request.
Further, as stated previously, Adamson has only presented facts that show America’s Servicing represented that (1) Adamson could contact America’s Servicing to discuss the reasons for his modification denial and any “alternative loss mitigation options that may be available”; and (2) the foreclosure would not occur for thirty days if allowed by state law and investor guidelines. America’s Servicing made clear that “any pending foreclosure action may continue.” Therefore, there are also no facts to plausibly suggest that America’s Servicing represented that it would not foreclose until it fully considered other loss mitigation options.[5]
IV. In Count IV, Adamson has failed to state a claim for unjust enrichment because he has not offered facts to plausibly suggest the unjust conferral of a benefit.
In Count IV of the complaint, Adamson alleges that the Defendants were unjustly enriched by the foreclosure of the Property. The complaint states: “By their wrongful acts and omissions, including but not limited to failing to adhere to the conditions precedent to foreclosure and by failing to negotiate in good faith, the Defendants’ have been unjustly enriched at the expense of [Adamson].” Based on the facts alleged in the complaint, Adamson has failed to state a claim for which relief can be granted.
Unjust enrichment is defined as “retention of money or properly of another against the fundamental principles of justice or equity and good conscience.” Santagate v. Tower, 64 Mass.App.Ct. 324, 329 (2005). To state a claim for unjust enrichment there must be “unjust enrichment of one party and unjust detriment to another party.” Massachusetts Eye and Ear Infirmary v. QLT Phototherapeutics, Inc., 552 F.3d 47, 57 *37 (1st Cir. 2009). It is not enough to show that a benefit was conferred on another parly, but rather, the plaintiff must show a benefit bestowed on the defendants and the “defendant’s retention of that benefit is unjust and that equity requires that this court shift the benefit back to plaintiff.” See Fernandes v. Havkin, 731 F.Sup.2d 103, 114 (D.Mass. 2010).
Adamson has not offered any facts to suggest that the benefit bestowed on the Defendants from the foreclosure of the Properly was unjust. Adamson does not point to any fact to show that Defendants failed to adhere to the conditions precedent to foreclosure. Also, based on the facts in the proposed amended complaint, Adamson was not entitled to negotiate a modification of the Mortgage prior to foreclosure. Without a showing of facts to plausibly suggest the unjust conferral of a benefit, Adamson has failed to state a claim for unjust enrichment.
V. In Count V, Adamson has stated a claim for wrongful foreclosure.
In Count v. of the proposed amended complaint, Adamson claims that the Defendants wrongfully foreclosed based on bad faith and lack of standing.[6] Adamson alleges that the foreclosure of the Property was conducted in bad faith. With regards to America’s Servicing, Adamson alleges that it (1) failed to comply with its express and implied promises to consider his application for a mortgage modification in good faith; (2) failed to perform loan servicing functions consistent with its responsibilities to its customers; and (3) failed to honor its promise not to imminently foreclose while considering his modification application and other loss mitigation options.
With regards to MERS and Deutsche Bank, Adam-son alleges that MERS claims to be the holder of the Mortgage and the Note but has failed to produce the original Note in violation of G.L.c. 106, §3-301 and the common law of Massachusetts. Lastly, Adamson alleges that America’s Servicing and Deutsche Bank breached the covenant of good faith and fair dealing.
A. Adamson has failed to state a claim for wrongful foreclosure based on the actions of America’s Servicing and the alleged breaches of the covenant of good faith and fair dealing.
First, the actions of America’s Servicing did not constitute wrongful foreclosure. Based on his own allegations, Adamson did not have an application pending for a mortgage modification. The Denial Letter rejected Adamson’s most recent attempt at a modification and he does not allege to have started new negotiations with America’s Servicing. Also, Adamson makes no legal argument to show how failing to properly service the Mortgage would invalidate the foreclosure and it is unclear from the proposed amended complaint how America’s Servicing failed to properly service the Mortgage. Further, the Denial Letter did not create a promise to stay foreclosure or continue modification negotiations. Lastly, as stated in Section I, Adamson has failed to state a claim for the breach of the covenant of good faith and fair dealing.
B. Adamson has stated a claim for wrongful foreclosure based on the Defendants’ failure to provide proof that they hold the Note.
Adamson argues that the Defendants have failed to provide proof that they are the holder of the Note, and therefore, the foreclosure of the Property was in violation of G.L.c. 106, §3-301 and the common law of Massachusetts.[7] Taking the allegations in the proposed amended complaint as true, there is no evidence that the Mortgage and the Note were united prior to the foreclosure of the Property.[8] While it is conceded that the question of whether Massachusetts law requires a party to hold both the mortgage and the note to foreclose under the power of sale is close, this court reads the law as requiring a mortgagee to either hold both the mortgage and the note or establish that it is acting at the behest of the holder of the note.
Under Massachusetts law, a mortgage is a transfer of legal title in property to secure a debt.[9] U.S. Bank Nat’l Ass’n v. Ibanez, 458 Mass. 637, 649 (2011). The mortgage is considered to be “but an incident to the debt.” See Perry v. Oliver, 317 Mass. 538, 541 (1945). Different parties can hold the mortgage and the debt. See Lamson & Co. v. Abrams, 305 Mass. 238, 245 (1940). In other jurisdictions, the transfer of the debt will automatically carry with it the transfer of the mortgage. See Barnes v. Boardman, 149 Mass. 106, 114 (1889). Massachusetts courts, however, have historically rejected this approach. See id. Instead, when the mortgage is separated from the debt, “the mortgagee would hold the legal title in trust for the purchaser of the debt. . "Id. The purchaser of the debt may “thereafter enforce in equity an assignment of the mortgage.” First Nat’l Bank of Cape Cod v. North Adams Hoosac Sav. Bank, 7 Mass.App.Ct. 790, 796 (1979).
Adamson argues that the recent Superior Court decision Eaton v. Federal Nat'l Mortgage Ass’n, 11-1382, slip op. (Mass.Super.Ct. June 17, 2011) (McIntyre, J.) (appeal pending), supports the argument that Massachusetts common law requires a party to hold both the mortgage and the note to foreclose. This court reads the cases cited in Eaton as providing support for Adamson’s argument. See Crowley v. Adams, 226 Mass. 582 (1917); Wolcott v. Winchester, 15 Gray 461 (1860).
In Wolcott, the plaintiff had acquired title from a party who held an unrecorded assignment of the mortgage and the note. Id. at 461-62. The defendant had acquired the entire mortgage interest from the record holder of the mortgage but did not acquire the note. See id. at 463-64.
The Court noted that a purchaser of the mortgage:
*38 must have known that the possession of the debt was essential to an effective mortgage, and that without it he could not maintain an action to foreclose the mortgage. The not finding [the note] in possession of the mortgagee, and not stipulating for any transfer of such debt, are circumstances that should estop him from setting up any title against the bona fide purchaser of the debt, who has possession of the bond and an assignment of the mortgage in due form to vest the legal estate in him as against the assignor, and only defective as to any others, in not being recorded.
Id. at 465 (emphasis added). The Court distinguished the present facts from instances where a party holding only the debt seeks to enforce a mortgage. See id. In such instances, the party would have to resort to a bill in equity to charge the mortgage holder to act as a trustee for the party holding the debt. See id. at 465-66.
Because the plaintiff had a legal transfer of both the debt and the mortgage, the only issue for the Court was determining priority of title. See id. at 466. The Court found that the plaintiff, abona fide purchaser of the note and holder of an unrecorded assignment of the mortgage, had better title than the defendant who held a conveyance of the mortgage without the note. See id.
Wolcott implies that in order to foreclose, the mortgage and the debt should be held by the same person. See id. at 465. While the main issue in the case concerned which party had superior title, there is still support for Adamson’s position that the mortgage and the note should be united prior to foreclosure. See id. at 465-66.
Under the facts in Crowley, the petitioner acquired two parcels of land by purchasing them at foreclosure sales. 226 Mass. at 582. The foreclosing party held the mortgages through an assignment but did not have possession of the notes. Id. at 582-84. The Court found that the petitioner did not have superior title because the debt on both mortgages had been extinguished prior to the alleged assignments. Id. at 584-85. Because the Court found that when the debt was extinguished the mortgage holder could no longer foreclose on the mortgage, Crowley also provides some support for the idea that the mortgage and the note should be held by the same person to properly foreclose. Cf. id. at 585.
Further, not requiring the foreclosing party to hold the note or establish that it is acting at the behest of the note holder could harm the mortgagor. For example, the holder of the note could attempt to collect on the note after the mortgage was foreclosed subjecting the mortgagor to double liability. Cf. Cooperstein v. Bogas, 317 Mass. 341, 344 (1944) (“the title held by the mortgagee cannot be separated from the note and applied independently of the note by a creditor of the mortgagee in payment of a debt of the latter, leaving the note outstanding as a valid obligation of the mortgagor to the holder of the note who might possibly be a person other than the mortgagee”).
To have the authority to foreclose by exercising the power of sale, a party must either be the original mortgagee or hold the mortgage through a valid assignment.[10] See Ibanez, 458 Mass. at 648. Further, this court reads the law as requiring the mortgagee to either hold the note or establish that it is acting at the behest of the note holder.[11] Therefore, because the proposed amended complaint alleges that the Defendants have failed to provide proof that they are holders of the original Note and there are no facts in the complaint to suggest that the Defendants are acting on the behest of the holder of the Note, Adamson has stated a claim for wrongful foreclosure based on the Defendants’ failure to provide proof that they hold the Note.[12]
VI. Adamson has alleged sufficient facts to state a claim for violation of G.L.c. 93A.
In Count VI of the proposed amended complaint, Adamson has alleged unfair and deceptive business practices in violation of G.L.c. 93A. Adamson alleges that the Defendants violated G.L.c. 93A by: (1) failing to negotiate in good faith with him for a halt in foreclosure proceedings; (2) allowing the foreclosure to proceed without providing him with a formal written denial of his mortgage modification and an opportunity to discuss non-approval or alternative loss mitigation options; (3) misrepresenting that the foreclosure would not proceed imminently where the mortgage modification application could still be reviewed and alternative loss mitigation could still be explored; (4) failing to process his modification in good faith; and (5) proceeding with a foreclosure when the Defendants lacked standing to foreclose.
To state a claim for a violation of G.L.c. 93A, §2 a parly must show an unfair or deceptive act or practice in the conduct of any trade or commerce. G.L.c. 93A, §2(a). General Laws c. 93A should be interpreted as “a statute of broad impact which creates new substantive rights and provides new procedural devices for the enforcement of those rights.” Kattar v. Demoulas, 433 Mass. 1, 13 (2000) (stating a claim under G.L.c. 93A is “not dependent on traditional tort or contract law concepts”).
The statute has not defined the terms unfair and deceptive. See G.L.c. 93A. Courts have typically found a practice or act to be unfair if it (1) is “within at least the penumbra of some common-law, statutory, or other established concept of unfairness”; (2) is “immoral, unethical, oppressive, or unscrupulous”; or (3) “causes substantial injury to consumers (or competitors or other businessmen).” See PMP Assocs., Inc. v. Globe Newspaper Co., 366 Mass. 593, 596 (1975). A practice or act is typically found to be deceptive if it “could reasonably be found to have caused a person to act differently from the way he otherwise would have acted.” Lowell Gas Co. v. Attorney General, 377 Mass. 37, 51 (1979).
Lastly, a party must show that he was injured by the defendant’s unlawful act or practice. See G.L.c. 93A, §9(1). Under the statute injury can be shown by harm or by the “invasion of any legally protected *39 interest” even though no harm is done. See Leardi v. Brown, 394 Mass. 151, 159-61 (1985).
A. The Defendants’ failure to stay foreclosure proceedings for thirty days from the date of the Denial Letter is possibly a HAMP violation and provides a sufficient basis to suggest a plausible entitlement of relief.
Adamson argues that the Defendants violated HAMP guidelines by failing to stay the foreclosure for thirty days from the date of the Denial Letter. Supplemental Directive 10-02, effective June 1, 2010, states:
The servicer may not conduct a foreclosure sale within the 30 calendar days after the date of a Non-Approval Notice or any longer period required to review supplemental material provided by the borrower in response to a Non-Approval Notice unless the reason for non-approval is (1) ineligible mortgage, (2) ineligible property, (3) offer not accepted by borrower/request withdrawn or (4) the loan was previously modified under HAMP.
Federal District Court decisions in Massachusetts have addressed the issue of whether HAMP violations constitute a violation of G.L.c. 93A. See, e.g., Okoye v. Bank of New York Mellon, 2011 U.S. Dist. LEXIS 82769 at *20-*25 (D.Mass. 2011). It has been consistently found that HAMP violations can constitute a violation of G.L.c. 93A. See id. at *25. To determine if a HAMP violation constitutes a violation of G.L.c. 93A a court must ask:
(1) have plaintiffs adequately plead that defendant violated HAMP; (2) are those violations of the type that would be independently actionable conduct under chapter 93A even absent the violation of a statutory provision (i.e. are the violations unfair or deceptive); and (3) if the conduct is actionable, is recovery pursuant to chapter 93A compatible with the “objectives and enforcement mechanisms” of HAMP?[13]
Ording v. BAC Home Loans Servicing, LP, 2011 U.S. Dist. LEXIS 83269 at *22 (D.Mass. 2011).
The allegations in the proposed amended complaint plausibly allege a violation of HAMP. The Denial Letter appears to be a non-approval notice. It was dated August 10, 2010 and the foreclosure auction occurred the next day. Also, the Denial Letter states that Adam-son was not approved for a HAMP modification because he did not provide the Defendants with the required documents, which is not one of the listed exceptions to the thirty-day rule.
Further, the foreclosure occurring the day after the date of the Denial Letter could be considered unfair under G.L.c. 93A. Consumers could be injured because they would have little or no time to challenge the modification denial or take any action to prevent foreclosure. Also, Adamson alleges that the Defendants had stayed foreclosure in the past during modification negotiations. Because it is plausible that the Defendants violated HAMP and the violation could be considered unfair, Adamson has pled sufficient facts to withstand this motion to dismiss.
B. Adamson’s remaining allegations fail to state a claim for violation of G.L.c. 93A.
Adamson’s remaining allegations do not have merit. First, Adamson alleges that the Defendants violated G.L.c. 93A by proceeding with foreclosure when the Defendants lacked standing because MERS did not hold the Note. The legality of the foreclosure is not dispositive of whether the actions of the Defendants violated G.L.c. 93A. See Kattar, 433 Mass. at 13-14 (finding that a foreclosure violated G.L.c. 93A even though the defendants were legally entitled to foreclose because the defendants’ motive in foreclosing was unfair or deceptive).
Here, Adamson merely alleges that MERS did not hold the Note, and therefore, did not have standing to foreclose. Adamson is correct that a foreclosing mortgagee “must act in good faith and must use reasonable diligence to protect the interests of the mortgagor.” See Williams v. Resolution GGFOY, 417 Mass. 377, 382-83 (1995) (quoting Seppala & Aho Constr. Co. v. Petersen, 373 Mass. 316, 320 (1977)). Adamson, however, does not allege facts to show that MERS’s failure to hold the Note was unfair or deceptive.
Further, Adamson argues that the Defendants violated G.L.c. 93A by failing to negotiate a modification of the Mortgage in good faith. The Defendants were under no duty to negotiate a mortgage modification prior to foreclosure. See Schwanbeck v. Federal-Mogul Corp., 31 Mass.App.Ct. 390, 396 (1991). While America’s Servicing was required to act in good faith once it voluntarily entered into modification negotiations, it was under no duty to indefinitely continue those negotiations. Cf. FAMM Steel 571 F.3d at 100-01.
The proposed amended complaint, however, fails to point to any facts that plausibly suggest that the Defendants failed to negotiate in good faith. Adamson merely alleges, “(u]pon information and belief, America’s Servicing was not negotiating in good faith.” While Adamson alleges all of his modification requests had been denied and the Denial Letter was misleading, there is nothing to suggest that the negotiations were conducted in bad faith. See Latham v. Homecomings Fin. LLC, 27 Mass. L. Rptr. 3, 5 (Mass.Super.Ct. 2010) (“Lack of good faith is more than poor judgment or negligence; rather, it involves a dishonest purpose, fraud, conscious doing of wrong, or breach of a known duty through motive of self-interest or ill will").
Similarly, there are no factual allegations to suggest that the Defendants failed to process Adamson’s mortgage modification in good faith. Adamson does not allege that he was entitled to a modification. Also, Adamson fails to give any example of how the modification was not processed in good faith.
In addition, Adamson argues that the Defendants misrepresented that the foreclosure would not proceed *40 imminently where the mortgage modification application could still be reviewed and alternative loss mitigation could still be explored. There are no facts in the proposed amended complaint to suggest that the Defendants represented that foreclosure would not proceed imminently. The Denial Letter states that Adamson could contact America’s Servicing to discuss “alternative loss mitigation options that may be available”; and (2) the foreclosure would not occur for thirty days if allowed by state law and investor guidelines. The Denial Letter makes clear, however, that “(y]our loan may be referred to foreclosure during this time, or any pending foreclosure action may continue.”
Lastly, Adamson alleges that the Defendants violated G.L.c. 93Aby allowing the foreclosure to proceed without providing Adamson with a formal written denial of his modification request. Based on the allegations in the proposed amended complaint, Adamson did receive a formal written denial of his modification request. The Denial Letter clearly denies Adamson’s request for a modification. Adamson fails to offer any facts to suggest that there was another modification request for which the Defendants did not provide a formal written denial.
ORDER
It is therefore ORDERED that Adamson’s motion to amend is ALLOWED and the Defendants’ motion to dismiss the amended complaint is ALLOWED with respect to Counts I-IV and ALLOWED in part and DENIED in part with respect to Counts V-VL

A11 claims against defendant Signature Group Holdings, Inc. f/k/a Fremont Investment and Loan Company (“Fremont”) were dismissed with prejudice by this court on May 13, 2011.

Mass.R.Civ.P. 15(a) states that a “party may amend his pleading only by leave of court” and “leave shall be freely given when justice so requires.” Generally, policy favors allowing amendments and “a motion to amend should be allowed unless some good reason appears for denying it." Castellucci v. United States Fid. & Guar. Co., 372 Mass. 288, 289 (1977). Futility of amendment is one reason that might justify the denial of a motion to amend. See Bengar v. Clark Equip. Co., 24 Mass.App.Ct. 41, 43 (1987).

Further, the Denial Letter did not create any new rights or duties, namely that modification negotiations would continue or that the Property would not be foreclosed on during the thirty-day period. The denial letter simply concerned modification negotiations and did not alter the terms of the Mortgage or Note. See Renovator's Supply, Inc. v. Sovereign Bank, 72 Mass.App.Ct. 419, 433 (2008).

Although not specifically alleged in Count III, Adamson’s proposed amended complaint generally alleges America’s Servicing represented that it would not foreclose for thirty days from the receipt of the Denial Letter “if allowed by state law and investor guidelines.” It is noteworthy that there are no allegations indicating that investor guidelines would have allowed the foreclosure to be stayed for thirty days.

This cause of action is mislabeled as Count IV in the proposed amended complaint. The proposed amended complaint already contains a Count IV for unjust enrichment.Therefore, the claim for wrongful foreclosure will be referred to as Count v. for continuity purposes.

General Laws c. 106, §3-301 states:
“Person entitled to enforce” an instrument means (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to section 3-309 or subsection (d) of section 3-418. A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.
Adamson is correct that the Uniform Commercial Code as adopted in Massachusetts is generally considered to apply to mortgage notes. See First Nat'l Bank of Cape Cod, 7 Mass.App.Ct. at 796.

At the hearing for Adamson’s motion for a preliminary injunction, the Defendants claimed that Deutsche Bank was the holder of the Note. However, because this is a motion to dismiss, only the facts alleged in the complaint shall be considered.

The mortgagor transfers all legal title in the mortgaged property to the mortgagee subject to the mortgagor’s equity of redemption. See Hanna v. Framingham, 60 Mass.App.Ct. 420, 425 n.9 (2004).

In order to foreclose by exercising the power of sale, a mortgage holder must strictly comply with the terms of the applicable statutes. See Bottomly v. Kabachnick, 13 Mass.App.Ct. 480, 484 (1982). The statutory power of sale is codified at G.L.c. 183, §21 and states that “upon any default in the performance or observance of the foregoing or other condition, the mortgagee or his executors, administrators, successors or assigns may sell the mortgaged premises ...” G.L.c. 183, §21 (emphasis added). The power of sale is further regulated by G.L.c. 244, §§11-17C. General Laws c. 244, §14 states the
mortgagee or person having his estate in the land mortgaged, or a person authorized by the power of sale, or the attorney duly authorized by a writing under seal, or the legal guardian or conservator of such mortgagee or person acting in the name of such mortgagee or person, may, upon breach of condition and without action, do all the acts authorized or required by the power . . .
(emphasis added). Therefore, the statutory scheme grants the mortgagee the authority to foreclose under the power of sale. See id.

 Under Massachusetts law, the mortgagee holds the mortgage in trust for “the purchaser of the note who can thereafter enforce in equity an assignment of the mortgage.” See First Nat’l Bank of Cape Cod, 7 Mass.App.Ct. at 796. It therefore follows logically that the mortgagee could foreclose at the behest of the holder of the note in a fiduciary capacity and hold the foreclosure proceedings in trust for the note holder to collect. Cf. id.

The proposed amended complaint states that Adamson signed the Mortgage to MERS. Because the Mortgage was to MERS, MERS would appear to have the authority to foreclose the Mortgage through the power of sale as the mortgagee if it also had the authority to enforce the Note. See G.L.c. 244, §14. Therefore, MERS could likely enforce the Note through foreclosure if it were either the holder of the Note or established that it was acting at the behest of the holder of the Note.

Recovery under G.L.c. 93A has generally been found to be consistent with the objectives and enforcement mechanisms of HAMP. See Blackwood v. Wells Fargo Bank, N.A., 2011 U.S. Dist. LEXIS 43663 at *4 (D.Mass. 2011).